1  SHANNON J. TAITANO, ESQ.
   OFFICE OF THE GOVERNOR OF GUAM
2  Ricardo J. Bordallo Governor's Complex
3  Adelup, Guam 96910
   Telephone:    (671) 472-8931
4  Facsimile:    (671) 477-6666

5  EDUARDO A. CALVO, ESQ.
   DANIEL M. BENJAMIN, ESQ.
6  CALVO & CLARK, LLP
7  Attorneys at Law
   655 South Marine Corps Drive, Suite 202
8  Tamuning, Guam 96913
   Telephone:    (671) 646-9355
9  Facsimile:    (671) 646-9403

10 Attorneys for the Government of Guam

11              IN THE UNITED STATES DISTRICT COURT
12                       DISTRICT OF GUAM

13 HENRY S. DACANAY and LAURA LYNN          Civil Case No. CIV05-00017
   DACANAY,
14                                          THE GOVERNMENT OF GUAM'S
                                            OPPOSITION TO MOTION FOR
15                        Plaintiffs,       CLASS CERTIFICATION AND
                                            APPOINTMENT OF CLASS
16          vs.                             COUNSEL

17 GOVERNMENT OF GUAM,

18                        Defendant.

19

20

21

22

23

24

25

26

27

28
   {G0012942.DOC;3}
   CIVIL CASE NO. 05-00017          ORIGINAL

FILED
DISTRICT COURT OF GUAM
JUN 16 2006
MARY L.M. MORAN
CLERK OF COURT

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES ................................................................................... iii

INTRODUCTION ..................................................................................................... 1

STATEMENT OF FACT............................................................................................ 2

    A.    Assessment of the 1998 & 1999 Taxes ..................................................2

    B.    The Collections Process............................................................................3

ARGUMENT ............................................................................................................. 4

I.    PLAINTIFFS HAVE NOT SATISFIED FED. R. CIV. PROC. 23(A)..............................6

    A.    Plaintiffs Cannot Satisfy the "Typicality" Requirement...........................6

        1.    Plaintiffs Cannot Establish Valid Claims......................................6

            a.    Plaintiffs Were Not Entitled to "Notices of Deficiency"................7

            b.    Plaintiffs Never Paid Any Taxes Pursuant to Any Recorded Lien, and So Have No Claim Regarding the Notice of Lien Issue...........9

            c.    Plaintiffs Have No Claim Regarding the Notice of Levy...............10

            d.    Plaintiffs Failed to Exhaust Administrative Remedies...................12

            e.    Plaintiffs' Claims Are Barred By the Statute of Limitations.........13

            f.    The Government of Guam Has Ten Years to Collect on an Assessment—Such that It Can Recoup Any Monies Recovered....14

        2.    Individual Issues Predominate.....................................................14

    B.    The Plaintiffs Cannot Demonstrate Adequacy of Representation............................................................................................16

        1.    Concerns as to the Adequacy of Counsel......................................16

        2.    The Dacanays' Lack of Adequacy as Proposed Class Representatives......16

    C.    The Plaintiffs Cannot Demonstrate Commonality.................................17

    D.    Plaintiffs Also Failed to Meet the Numerosity Requirement...................19

        1.    Plaintiff failed to identify a *single* taxpayer who is a class member...........19

        2.    "Numerosity" requires that Plaintiffs show there are taxpayers who have met the jurisdictional requirements for a tax refund claim.........................21

        3.    Plaintiff has failed to allege that "surrounding circumstances" support a finding of numerosity.........................21

1   II.     THIS ACTION DOES NOT SATISFY FED. R. CIV. PROC. 23(B)................................22

2           A.      This Case Cannot Be Certified under Fed. R. Civ. Proc. 23 (b)(3) Because
                    Common Issues Cannot Predominate in this Tax Refund Case..............................22

3
            B.      This Case Cannot Be Certified under Fed. R. Civ. Proc. 23(b)(1)(A) Because the
4                   Government Does Not Face "Incompatible Standards" of Conduct.......................23

5           C.      This Action Cannot Be Certified Under Rule 23(b)(1)(B) Because No Showing
                    Has Been Made that This is a "Limited" or "Common" Fund Case.......................24

6
            D.      This Action Cannot Be Certified as an Action for Injunctive or Declaratory Relief
7                   under Rule 23(b)(2) Because Its Primary Purpose Is Money Damages...................24

8           CONCLUSION .............................................................................................................. 25

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

<u>Cases</u>

*Abel v. United States,* 18 Cl.Ct. 477 (1989)..................................................................... 22

*Agent Orange Prod. Liab. Litig,* 800 F.2d 14 (2d Cir. 1986) ......................................... 16

*Agron v. Illinois Bell Tel. Co.,* 325 F. Supp. 487 (D.C. Ill. 1970) ................................... 5

*Amchem Prods Inc. v. Winsor,* 521 U.S. 591 (1997) .................................................. 6, 22

*Appoloni v. United States,* 218 F.R.D. 556 (W.D. Mich. 2003) ............................. 6, 12, 21

*Appoloni v. United States,* 219 F.R.D. 116 (W.D. Mich. 2003) ........................................ 6

*Appoloni v. United States,* 333 F. Supp. 2d 624 (W.D. Mich. 2003).............................. 6

*Bank of Am. v. Blaz,* 539 F.2d 1226 (9th Cir. 1976) ........................................................ 1

*Califano v. Yamasaki,* 442 U.S. 682 (1979)................................................................... 19

*Crawford v. Honig,* 37. F.3d 485 (9th Cir. 1994) ........................................................... 16

*Fisher v. United States,* 69 Fed. Cl. 193 (2006) ....................................................... 20, 21

*Fulgoni v. U.S.,* 23 Cl. Ct. 119 (1991) ............................................................................ 9

*General Tel. Co. of Southwest v. Falcon,* 457 U.S. 146 (1982).......................... 6, 9, 18

*Hanon v. Dataproducts Corp.,* 976 F.2d 497 (9th Cir. 1992) ....................................... 17

*Hansberry v. Lee,* 311 U.S. 32 (1940) ............................................................................ 16

*Harriss v. Pan-Am.,* 74 F.R.D. 24 (C.D. Cal. 1977) ..................................................... 21

*Heisler v. U.S.,* 463 F.2d 375 (9th Cir. 1972) ............................................................... 12

*In re Bendectin Prod. Liab. Litig.,* 749 F.2d 300 (6th Cir. 1984) ................................. 23

*In re Paxil Litigation,* 212. F.R.D. 539 (C.D. Cal 2003) ............................................... 24

*In re Phenylpropanolamine (PPA) Products Liability Litigation,* 208 F.R.D. 625 (W.D. Wa. 2002) ......................................................................................................... 24

*In re Syncor Erisa Litig.,* 227 F.R.D. 338 (C.D. Cal. 2005) ......................................... 23

*Internal Revenue Service v. McDermott,* 507 U.S. 447 (1993)..................................... 10

*Joyce Barry,* 48 BR 600 (Bankr. M.D. Tenn. 1985)......................................................... 8

*Kanter v. Warner-Lambert Co.,* 265 F.3d 853 (9th Cir. 2001) ...................................... 25

*Klender v. United States,* 218 F.R.D. 161 (E.D. Mich. 2003) ......................................... 6

*Knoefler v. Schneider,* 565 F. 2d 1072 (9th Cir. 1977)................................................... 8

*Lewis v. Reynolds,* 284 U.S. 281 (1932) ......................................................................... 5

*Lierboe v. State Farm Mut. Auto. Ins. Co.,* 350 F.3d 1018 (9th Cir. 2003)................... 9

*Lipsett v. United States,* 37 F.R.D. 549 (S.D.N.Y. 1965) ............................................... 5

*Lyddon & Co. (America) Inc. v. United States,* 158 F. Supp. 951 (Ct. Cl. 1958)........... 8

*Marangi v. Government of Guam,* 319 F. Supp. 2d 1179 (D. Guam 2004) ................... 25

*McConnell v. United States,* 295 F. Supp. 605 (D. Tenn. 1969) ..................................... 5

*Molski v. Gleich,* 318 F.3d 937 (9th Cir. 2003) ............................................................ 24

*Monge v. Smyth,* 229 F.2d 361 (9th Cir. 1956) ............................................................... 7

*O'Shea v. Littleton,* 414 U.S. 488 (1974)........................................................................ 6

*Oatman v. Dep't of Treasury,* 34 F.3d 787 (9th Cir. 1994) ................................... 12, 15

*Pit River Home & Agricultural Co-op. Ass'n v. United States,* 30 F.3d 1088 (9th Cir.1994) ....... 13

*Quarty v. United States,* 170 F.3d 961 (9th Cir. 1999).................................................. 13

*Rock Island R.R. Co. v. United States,* 254 F.S. 141 (1920) ........................................ 12

*Saunooke v. United States,* 8 Cl. Ct. 327 (1985)............................................................. 5

*Staton v. Boeing Co.,* 327 F.3d 938 (9th Cir. 2003)........................................................ 6

*Turner-Simmons v. U.S.,* 2005 WL 1155222 (N.D. Ga., March 21, 2005) ................... 13

*United States v. Gilbert,* 1991 WL 195585 (D. Ariz 1991) ............................................. 8

*United States v. McDermott*, 507 U.S. 447(1993) .................................................. 19
*United States v. Spence*, 110 F. Supp. 2d 1335 (D. N.M. 1999)................................. 8
*UOP v. U.S.*, 99 F.3d 344 (9th Cir. 1996)............................................................... 13
*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) .............................. 5
*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001)........... 4, 23, 24, 25

<u>Statutes</u>

26 U.S.C. § 6103 ................................................................................................ 22
26 U.S.C. § 6212 ....................................................................................... 13, 18, 20
26 U.S.C. § 6213 ..................................................................................... 7, 8, 13, 20
26 U.S.C. § 6320 ............................................................................................. 9, 13
26 U.S.C. § 6321 ........................................................................................... 10, 19
26 U.S.C. § 6322 ................................................................................................ 10
26 U.S.C. § 6323 ................................................................................................ 10
26 U.S.C. § 6330 ................................................................................. 10, 11, 13, 18
26 U.S.C. § 6343 ................................................................................................ 18
26 U.S.C. § 6402 ................................................................................................. 8
26 U.S.C. § 6502 ................................................................................................ 14
26 U.S.C. § 6511 ................................................................................................ 15
26 U.S.C. § 6532 ................................................................................................ 12
26 U.S.C. § 6662 ................................................................................................. 2
26 U.S.C. § 7422 ................................................................................................ 12
48 U.S.C. § 1421i .......................................................................................... 1, 24

<u>Rules</u>

Fed. R. Civ. Proc. 23 ................................................................................. 6, 22, 23, 24

<u>Treatises</u>

3 Herbert B. Newberg on Class Actions (4th ed. 2002)........................................... 10
7A Charles Alan Wright et al., Federal Practice and Procedure § 1762 (3d ed.2005) ........ 21

<u>Regulations</u>

Treasury Regulation § 301.7433-1 .......................................................................... 13

Defendant Government of Guam respectfully submits this opposition to the motion by Plaintiffs Henry and Laura Lynn Dacanay (the "Dacanays" or "Plaintiffs") to certify this action as a class action.

## INTRODUCTION

Plaintiffs seek to certify a class of Guam taxpayers who allegedly did not receive adequate (1) "Notices of Deficiency," (2) "Notices of Liens," and (3) "Notices of Intent to Levy," in alleged violation of the IRS Restructuring and Reform Act of 1998. (*See* MPA 1:24-2:10, Amended Complaint ¶¶ 2-4, 9). These laws are alleged to apply to Guam based on the mirroring of the Internal Revenue Code ("IRC") to create the Guam Territorial Income Tax ("GTIT").[1]

Plaintiffs have alleged in their complaint that they fall within this class because they allegedly received inadequate notices as to tax years 1998 and 1999 or did not receive notices at all. (*See id.*) Yet, Plaintiffs have done little in their motion (or otherwise) to demonstrate that this is true and that they actually fall within the class they wish to certify. Whether intentional or not, this has masked the fact that they do not fall within that class.

As will be shown, Plaintiffs were not entitled to "Notices of Deficiency" as a matter of law. They agreed to the assessment of their 1998 taxes after an audit and waived their right to further notice by executing a Form 4549. And they admitted to their tax liability for tax year 1999, which means they were not entitled to a Notice of Deficiency at all (such notices only applying to cases where the amount owed is other than that stated in the return).

Similarly, Plaintiffs have no valid claims as to the Notices of Lien or Levies. They paid

---

[1] In enacting the Organic Act of Guam, Congress created the GTIT to mirror almost all of the Internal Revenue Code (Title 26 of the U.S.C.) and to provide a source of revenue to fund the Government of Guam. *See* 48 U.S.C. § 1421i(a) ("The income-tax laws in force in the United States of America and those which may hereafter be enacted shall be held to be likewise in force in Guam...."); *Bank of Am. v. Blaz*, 539 F.2d 1226, 1227-28 (9th Cir. 1976) (per curiam). However, the tax collected by the Government of Guam is payable to the Government of Guam. *Id.* § 1421i(b),(c). The Organic Act also provides for the substitution of terms in the Internal Revenue Code so that its application in Guam is clear. 48 U.S.C. § 1421i(e) (stating that "Guam" is substituted for "United States"; "Governor or his delegate" for "Secretary or his delegate" and "Commissioner of Internal Revenue"). Further, the language and nomenclature of the IRC must be read to change or omit any other language where this is "necessary to effect the intent of this section." *Id.* Finally, section of the IRC will not apply in Guam if manifestly inapplicable to Guam or incompatible with the intent of the Organic Act. *Id.* § 1421i(d)(1).

no taxes after such notices were sent for the applicable year. Their assets were never levied. And the lien against them was lifted after only ten days when Plaintiffs advised the Guam Department of Revenue & Taxation ("DRT") that they were entitled to offsets of the their Form BRQ's for Gross Receipts Tax that would offset any tax due. Such offsets ultimately satisfied the amounts due, and the rules requiring notices of liens or levies do not apply to offsets.

Indeed, there are numerous ways in which Plaintiffs do not satisfy the four requirements of Fed. R. Civ. Proc. 23(a) (typicality, adequacy of representation, commonality, and numerosity). Plaintiffs also face jurisdictional defenses not necessarily shared by the class. And they have not met any of the alternative tests under Rule 23(b). Certification should be denied.

## STATEMENT OF FACT

### A. Assessment of the 1998 & 1999 Taxes

On April 15, 1999, the Dacanays filed a joint tax return for tax year 1998 reporting that a refund of $2,808.00 was owed to them. (Pablo Dec. ¶ 12 & Ex. B). However, the return was selected for an audit. (*Id.* ¶ 13 & Ex. F). On June 3, 2002, the audit of the Dacanays' 1998 tax year return (as amended) was completed as an "agreed case." (Pablo Dec. ¶ 16 & Ex. Q). This means that the Dacanays chose to execute a Form 4549, waiving the right to contest an assessment of taxes and to further notice of the assessment. (*Id.* ¶¶ 5, 15, 18 & Ex. Q). The agreed result of the audit was that the Dacanays owed taxes for tax year 1998 of $5,715.00 and a penalty of $1,143.00 under 26 U.S.C. § 6662(d). (*Id.* Ex. Q). The Dacanays' 1998 GTIT taxes due were assessed on August 8, 2002. (*Id.* Ex. T).

On April 14, 2000, the Dacanays had filed a joint tax return for 1999 reporting that they owed the Government of Guam $1,795.00. (Pablo Dec. ¶ 19 & Ex. "G"). Accompanying that return was a letter from Ms. Dacanay asking that DRT offset the Dacanays' 1999 tax liability with the tax refunds claimed for tax years 1997 and 1998. (*Id.* Ex. H). However, this was not possible. The remaining amount owed to the Dacanays for tax year 1997 already had been refunded or offset against other liabilities. (*Id.* ¶ 20). And tax year 1998 had been selected for an audit, as discussed above. The result was that on June 28, 2000, DRT processed the Dacanays' 1999 tax return and assessed the amount due. (Id. Ex. M). No further notice was required because DRT was only assessing the amount the taxpayer admitted was due. (*Id.* ¶¶19-21).

## B. The Collections Process

DRT began collections proceedings as to tax year 1999 on July 21, 2000, when the Dacanays' tax year 1999 case was labeled delinquent and referred to the Collections Branch. A Second Notice was sent to the Dacanays accompanied by IRS Publication 1 (which advises taxpayers of many of their rights). (Pablo Dec. ¶ 23, & Exs. M, S).

On October 2, 2000, DRT sent to the Dacanays by certified mail a "Notice of Intent to Levy" for tax year 1999 accompanied by IRS Publication 594 and DRT Publication 1660. (Pablo Dec. ¶ 25 & Exs. O, K, L). These publications contain numerous facts regarding the rights of taxpayers in collections proceedings. (*Id.*) DRT never enforced a levy for tax year 1999 (i.e., the Dacanays' assets and wages were never levied). (Pablo Dec. ¶ 26).

On February 6, 2003, the Dacanays' tax year 1998 case also was labeled a delinquent account and referred to the Collections Branch. (Pablo Dec. ¶ 28). Again, the Dacanays received a notice and Publication No. 1. (*Id.*).

On February 24, 2003, the Dacanays made voluntary payments of $10,238.15 for various taxes owed. (Pablo Dec. ¶ 30). The "Field Receipts" for this payment indicate that of this amount, $4,677.57 was paid for Guam Gross Receipt Tax (using Form BRQ) owed by the Dacanays for the period from December 2001 to December 2002. The remainder of this amount, $5,560.58 was paid to the Dacanays' 1998 GTIT tax year liability based upon the Form 4549 "agreed" examination result. (*Id.* ¶¶ 30-32 & Ex. U).

On or about March 20, 2003, DRT sent to the Dacanays by certified mail a "Notice of Intent to Levy" for tax year 1998. (Pablo Dec. ¶ 33 & Ex. V). Again, standard DRT procedure was that it was accompanied by IRS Publication 594 and DRT Publication 1660, publications containing numerous facts regarding the rights of taxpayers in collections proceedings. (*Id.* Exs. K, L). As with the levy for tax year 1999, DRT never enforced the levy for tax year 1998 (i.e., the Dacanays' assets and wages were never levied). (Pablo Dec. ¶ 34).

On March 25, 2003, DRT recorded a Guam federal tax lien for tax years 1998 and 1999, and sent a copy to the Dacanays. (Pablo Dec. ¶ 35 & Ex. W). The "Notices of Intent to Levy" (Pablo Dec. Exs. O and V) had also provided prior notice to the Dacanays of the intent to file the lien. (Pablo Dec. ¶ 35). Although at the time it appeared the Dacanays still owed DRT money, it

was soon determined that there were available funds with which to offset the remaining balance for tax year 1998, as well as the entire balance for 1999 (which had yet to be paid at all). (Pablo Dec. ¶ 36). Back on June 8, 2000, DRT had approved an amnesty for the Dacanays' June 1998 to September 1999 BRQ's. This meant that (after further processing), the Dacanays would eventually receive a refund or offset of the BRQ's previously satisfied by an offset of the 1997 taxes. (Pablo Dec. ¶¶ 9, 37). Moreover, on February 24, 2003, the Dacanays filed several years' worth of amended BRQ's. This created the possibility of further offsets. (Pablo Dec. ¶ 38).

According to DRT records, on April 4, 2003, Ms. Dacanay came into DRT and met with the Collections Officer assigned to the case. (Pablo Dec. ¶ 39). She stated that the amended BRQ's that had been filed on February 24, 2003 would show an overpayment by the Dacanays sufficient to satisfy the remaining GTIT taxes owed for tax years 1998 and 1999. However, only the Business Privilege Tax Branch ("BPTB") of DRT (which is separate from the Examination and Collection Branches) can process amended BRQ's. (*Id.* ¶ 39 & Ex. Y).

Thus, Mr. Guerrero referred Ms. Dacanay to the Supervisor of BPTB, Janice Benavente. Ms. Benavente called Mr. Guerrero, asking that he hold off on collection and release the lien because the amended BRQ's would be enough to offset the amounts owed. (*Id.*) That same day (April 4, 2003), DRT released the tax lien that had been put in place ten days earlier. (Pablo Dec. ¶ 40 & Ex. X). No money was ever collected from the Dacanays based on the lien. (*Id.* ¶ 40).

On December 21, 2005, the BRQ offset/original 1997 offset was processed and used to satisfy all remaining obligations by the Dacanays for tax year 1998 and 1999, and a "Notice of Adjustment" was sent to the Dacanays. (Pablo Dec. ¶ 41 & Ex. Z). With the offset made, the Dacanays' collection accounts for tax years 1997 and 1998 were closed. (*Id.* ¶ 41).

## ARGUMENT

"[T]he party seeking class certification . . . bears the burden of demonstrating that [he or] she has met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001) (citation omitted). "Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23." *Id.* (citing *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227,

1233 (9th Cir. 1996)). "While the trial court has broad discretion to certify a class, its discretion must be exercised within the framework of Rule 23." *Id.* (citation omitted).

In seeking class certification of this tax refund action, Plaintiffs are pursuing a path that has been consistently rejected by the courts. As almost every court that has ever considered certifying a tax refund class has concluded, it is impossible to demonstrate typicality under FRCP 23(a)(3) or that individual issues will not predominate under FRCP(b)(3) in tax refund cases because of the jurisdictional requirement that tax refund claims be individually exhausted. *Saunooke v. United States*, 8 Cl. Ct. 327, 330-31 (1985) (rejecting class certification in tax refund cases because court had to be able to individually determine that each class member met the jurisdictional prerequisites); *McConnell v. United States*, 295 F. Supp. 605, 606 (D. Tenn. 1969) (refusing to permit action to proceed as class action because exhaustion had to be proved individually); *Green v. United States*, 73-2 USTC ¶ 9729, 32 AFTR2d 73-5963 (E.D. Cal. 1973) (similar); *see also Agron v. Ill. Bell Tel. Co.*, 325 F. Supp. 487, 488 (D.C. Ill. 1970) (tax refund class action cannot be maintained because exhaustion cannot be shown) (citation omitted).

Further, federal law requires that each taxpayer's refund claim be individually adjudicated so that the tax collecting authorities have the opportunity to challenge its validity and amount, and to seek any other deficiencies that may be located. *Lipsett v. United States*, 37 F.R.D. 549, 552 (S.D.N.Y. 1965) ("Since a tax refund action involves in effect a reaudit of the individual taxpayer's return for the time period in question . . . , and not merely the ground on which the refund is sought, what would be tried were the relief granted, would be a composite action adjudicating the validity of each item on fourteen different returns. It is difficult to conceive of a situation where the original action would be more hindered than in such a chaotic suit.") (citing *Lewis v. Reynolds*, 284 U.S. 281 (1932)). This is another ground that makes class actions unworkable in tax refund cases. *Saunooke*, 8 Cl. Ct. at 330-31 (additional reason to reject class action claim is that the court would need to individually assess each tax return).

The only case to depart from this line of authority is (predictably) Plaintiffs' primary

authority, *Appoloni v. United States*, 218 F.R.D. 556 (W.D. Mich. 2003) ("*Appoloni I*").[2] However, the court that issued that opinion later amended that decision to exclude all non-exhausted claims because there was no jurisdiction over such claims. *Appoloni v. United States*, 219 F.R.D. 116, 119 (W.D. Mich. 2003) ("*Appoloni II*"). Moreover, the manageability of the tax refund phase of the class action was never tested because the defendants prevailed on a summary judgment motion. *See Appoloni v. United States*, 333 F. Supp. 2d 624 (W.D. Mich. 2003) ("*Appoloni III*"), *aff'd.* ___ F.3d __, 2006 WL 1541478 * 9 (6th Cir. June 7, 2006). Thus, the actual administration of a contested tax refund class—in any context—is completely untested.[3]

## I. PLAINTIFFS HAVE NOT SATISFIED FED. R. CIV. PROC. 23(A)

For class certification to be possible, Plaintiffs must satisfy the four requirements established by Fed. R. Civ. Proc. 23(a): typicality, adequacy of representation, commonality; and numerosity. *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003).

### A. Plaintiffs Cannot Satisfy the "Typicality" Requirement

Fed. R. Civ. Proc. 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." The named plaintiffs in this case, the Dacanays, may be the most "atypical" possible members in the potential "class" – indeed, they are not even potential class members in the first instance.

#### 1. Plaintiffs Cannot Establish Valid Claims

At a minimum, the named plaintiff in a class action must be a member of the class and must have suffered actual injury. *See, e.g., General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982) (plaintiff must be member of class she claims to represent); *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (class representative must be able to prove actual injury to herself).

---

[2] In a case involving the same tax refund for retired educators, a second court in Michigan reached the same conclusion. *Klender v. United States*, 218 F.R.D. 161 (E.D. Mich. 2003).

[3] Plaintiffs can find no support for certification in the consolidated EIC cases (D. Guam Civ. Case Nos. 04-00006, 04-00038, 04-00049), in which a motion to certify a *settlement* class is pending. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D) , for the proposal is that there be no trial." *Amchem Prods Inc. v. Winsor*, 521 U.S. 591, 620 (1997). And, as in *Appoloni*, taxpayers in the EIC cases must fulfill the jurisdictional requirements of filing a claim before they can become part of the EIC settlement class. Plaintiffs here are not proposing such exhaustion (having failed themselves to exhaust).

Plaintiffs claim standing to bring this suit as to the "Notices of Deficiency" because the Government allegedly failed to issue them valid "Notices of Deficiency" before collecting income taxes from them for tax years 1998 and 1999. (Docket No. 24 at ¶¶ 1, 2). Yet, Plaintiffs have *never* shown they were entitled to any "Notices of Deficiency" in those tax years and do not even appear to have inquired as to why they did not receive notices (even though the thrust of their suit is that defective notices were being sent out, not that most people were not receiving notices at all). As it happens, Plaintiffs did not receive notices for a very good reason—they were not entitled to such notices as a matter of law.

First:    As to tax year 1998, Plaintiffs claim that they did not receive the statutorily required "Notice of Deficiency" as required by 26 U.S.C. § 6213(a) for tax year 1998. (Docket No. 24 at ¶¶ 1, 2).  However, a "Notice of Deficiency" under 26 U.S.C. § 6213(a) is not always required.  Section 6213, in subpart (d), states that taxpayers "at any time (whether or not a notice of deficiency has been issued) have the right . . . to waive the restrictions provided in [§ 6213] subsection (a) on the assessment and collection of the whole or any part of the deficiency." 26 U.S.C. § 6213(d).  In other words, the right to a "Notice of Deficiency" can be waived.

Plaintiffs' claim for tax year 1998 falls under the waiver provision of 26 U.S.C. § 6213(d). With respect to the 1998 tax year, the Dacanays' tax return was audited and they were found to have underpaid their taxes by $5,715.00 and were assessed a penalty of $1,143.00. (Pablo Dec. ¶¶ 13-16 & Ex. Q).  At the close of the audit, the Dacanays agreed that this was the amount due and executed a Form 4549 ("Income Tax Examination Changes") on June 3, 2002. (Pablo Dec. Ex. Q).  Under the express terms of that Form, the Dacanays were declaring that they did "not wish to exercise [their] appeal rights with the Department of Revenue and Taxation or to contest in the District Court of Guam the findings in this report." (*Id.*)  The Dacanays further gave their "consent to the immediate assessment and collection of any increase in tax and penalties . . . shown above, plus any interest as provided by law." (*Id.*)

It long has been established law in the Ninth Circuit that execution of a Form 4549 and agreement to the immediate assessment and collection of liabilities waives the right to receive a "Notice of Deficiency" under § 6213(a). *Monge v. Smyth*, 229 F.2d 361, 368 (9th Cir. 1956)

(where taxpayer executed "agreement as to the deficiency," he "obviated the need of sending the formal deficiency notice" pursuant to § 6213(d)); *see also United States v. Spence*, 110 F. Supp. 2d 1335, 1344 (D. N.M. 1999), *rev'd on other grounds* 242 F. 3d 392 (10th Cir. 2000) (taxpayers were not entitled to statutory notices of deficiency because "they waived that right when they signed Internal Revenue Service Form 4549-A"); *In re Joyce Barry*, 48 BR 600, 603 (Bankr. M.D. Tenn. 1985) (taxpayer's execution of Form 4549 waived taxpayer's right to notice of deficiency, even where there was a computational error as to the amount assessed); *United States v. Gilbert*, 1991 WL 195585 * 2, 91-2 USTC ¶ 50400 (D. Ariz 1991) (finding that the taxpayer's signed Statement of Income Examination Changes "establishes his waiver of Section 6213 notification"). Accordingly, the Dacanays have no claim regarding their non-receipt of a "Notice of Deficiency" for tax year 1998, and are not typical of the alleged class in this regard.

Second: Plaintiffs also lack of a potential "Notice of Deficiency" claim for tax year 1999 (the only other tax year identified in their complaint). With respect to Plaintiffs' 1999 taxes, the Government of Guam merely sought to collect on Plaintiffs' tax liability, as reflected by their own tax return. (Pablo Dec. ¶ 19, Ex. G). Unlike tax year 1998, no audit was conducted as to tax year 1999. (*Id.*) Again, Ninth Circuit precedent is controlling.

Where the government "is attempting to collect only the amount shown on the return (plus penalties and interest), there is no deficiency and the [taxpayers] are not entitled to a 90-day letter." *Knoefler v. Schneider*, 565 F. 2d 1072, 1074 (9th Cir. 1977) (reasoning that "[n]inety-day letters, or notices of deficiency, are sent when the Commissioner determines that more tax is owed than is shown on the return"); *see also Lyddon & Co. (America) Inc. v. United States*, 158 F. Supp. 951, 953 (Ct. Cl. 1958) ("When one files a tax return showing taxes due, he has, presumably, assessed himself and is content to become liable for the tax . . . . The Commissioner has no occasion to determine a deficiency and give the taxpayer notice of it, since at that stage, . . . the taxpayer's own computation of his taxes may be taken as correct."). Thus, the Dacanays also have no claim regarding their non-receipt of a "Notice of Deficiency" for tax year 1999.

Third: Plaintiffs also were not entitled to any "Notice of Deficiency" for tax year 1999. The Government offset their liability for the 1999 tax year with refunds for other years. (Pablo Dec. ¶41, Ex. Z). 26 U.S.C. § 6402(a) expressly provides that, "[i]n the case of any overpayment,

the Secretary [of the Treasury], within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, *against any liability* in respect of an internal revenue tax on the part of the person who made the overpayment" (emphasis added). *Fulgoni v. U.S.*, 23 Cl. Ct. 119, 126 (1991) ("The IRS has express statutory authority to collect unpaid tax by administrative offset."). No authority requires notice for "a simple bookkeeping operation of applying a credit for [one year] against a debt for [another]." *Id.* at 126 ("There is no express statutory requirement that the IRS make notice and demand for payment upon the taxpayer before collecting unpaid tax by administrative offset," nor does "fairness" require it).

   b.   **Plaintiffs Never Paid Any Taxes Pursuant to Any Recorded Lien, and So Have No Claim Regarding the Notice of Lien Issue**

Plaintiffs cannot represent a class of persons who paid taxes pursuant to a technically imperfect government lien, when they themselves were never so injured. *See, e.g., General Tel. Co.*, 457 U.S. at 156 (plaintiff must be member of class she claims to represent); *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) (reversing class certification, court held that because plaintiff "has no stacking claim, she cannot represent others who may have such a claim, and her bid to serve as a class representative must fail.").

Here, the Government never collected any taxes from Plaintiffs pursuant to a lien for tax years 1998 or 1999. (Pablo Dec. ¶ 39). The Government briefly recorded a lien against Plaintiffs on March 25, 2003; however, it withdrew the lien ten days later on April 4, 2003. (*Id.* ¶¶ 35, 39, 40 & Exs. X, Y). Plaintiffs have never shown that they suffered *any* injury, and they made no payments during the time the lien was in force. (Pablo Dec. ¶ 40). Furthermore, even if they had, they could not show that any other person had suffered a similar error.

Even if the Government *had* attempted to collect on the lien, Plaintiffs arguably were not entitled to a notice of lien where they had already *agreed* to the amount of unpaid taxes assessed, and explicitly waived their rights to "exercise [their] appeal rights with the Department of Revenue and Taxation or to contest in the District Court of Guam the findings in this report." (Pablo Dec. ¶ 16, Ex. Q). The purpose of the notice of lien is simply to advise the taxpayer of his right to a hearing and administrative appeals. 26 U.S.C. §§ 6320, (a)(3), (b).

It neither effects nor affects the lien as against the taxpayer; the lien itself is automatic and

created upon the moment of assessment of unpaid taxes. *Internal Revenue Service v. McDermott*, 507 U.S. 447, 448 (1993) ("Upon th[e] assessment, the law create[s] a lien in favor of the United States on all real and personal property belonging to the [taxpayers], 26 U.S.C. §§ 6321 and 6322, including after-acquired property."). In fact, the Internal Revenue Code specifically contemplates that a notice of lien may be "premature or otherwise not in accordance with administrative procedures of the Secretary," and provides only that the "Secretary *may* withdraw a notice of lien" under such circumstances. 26 U.S.C. § 6323(j)(1) (emphasis added).

### c. Plaintiffs Have No Claim Regarding the Notice of Levy

#### i. The Government Never Levied Against the Dacanays

Just as Plaintiffs were never subject to an assessment of deficiency or an enforcement of lien, they also were never subject to the execution of a Government levy. (Pablo Dec. ¶ 42 e). As a result, Plaintiffs were never entitled to receive notices of intent to levy. 26 U.S.C. § 6330(a) (requiring notice "not less than 30 days" before the day of the first levy "made on any property or right to property of any person"). Furthermore, as previously discussed, Plaintiffs arguably were not entitled to a notice of intent to levy where they had already *agreed* to the amount of unpaid taxes assessed, and explicitly waived their rights to "exercise [their] appeal rights with the Department of Revenue and Taxation or to contest in the District Court of Guam the findings in this report." (Pablo Dec. ¶ 16, Ex. Q). And, as previously stated, Plaintiffs paid no taxes *pursuant* to a notice of levy. To the contrary, the only voluntary payments made were prior to any notice of intent to levy issuing for the relevant tax year. (Pablo Dec. ¶ 42 c, d).

#### ii. The Dacanays Received Proper Notices of Intent to Levy

Plaintiffs also cannot represent a class of persons who paid taxes pursuant to a technically imperfect notice of intent to levy because they themselves received notices that complied with § 6330. *See General Tel. Co. of Southwest*, 457 U.S. at 156; *Lierboe*, 350 F.3d at 1022; 3 Herbert B. Newberg on Class Actions § 3:19, at 400 (4th ed.2002) ("[S]tanding is the threshold issue in any suit. If the individual plaintiff lacks standing, the court need never reach the class action issue."). As Plaintiffs admit, the Government sent them a Final Notice/Notice of Intent to Levy on or about October 2, 2000 for the 1999 tax year. (Amended Complaint ¶ 57; Pablo Dec. ¶ 25). They were sent another Notice/Notice of Intent to Levy on or about March 20, 2003, for the 1998

tax year. (Pablo Dec. ¶ 33 & Exs. V, K, L).

Plaintiffs claim – without any evidence – that the notices did not comply with the requirements of § 6330(a)(3). The Amended Complaint fails to put forth any specific factual allegations explaining how or why their notices were deficient. That is because the notices did in fact "include in simple and nontechnical terms" all of the requirements of § 6330(a)(3).

Each notice was comprised of a letter, and several enclosures including: (1) a form "Request for a Collection Due Process Hearing" and related instructions; (2) IRS Publication 594, "What You Should Know About The IRS Collection Process," which includes a section called "Levies"; and (3) DRT Publication 1660, "Collection Appeal Rights for Liens, Levies, Seizures & Installment Agreements." (Pablo Decl. ¶¶ 25, 33 Exs. O, V). Each letter stated it was being sent as notice of Plaintiffs' "right to receive Appeals consideration under I.R.C. Section 6330." (*Id.*). Each letter set forth "the amount of unpaid tax," as required by § 6330(a)(3)(A) . *Id.* The papers clearly set forth, as required by § 6330(a)(3)(B), "the right of the person to request a hearing during the 30-day period . . ." (*See* Pablo Decl. Ex. K at 9 ("[Y]ou may file an appeal with the IRS Office of Appeals. You must file your appeal within 30 days of the date of the Final Notice of Intent to Levy and a Notice of Right to Hearing.").[4]

Each notice also included information required by § 6330(a)(3)(C):

•   "the provisions of this title relating to levy and sale of property[,]" and "the procedures applicable to the levy and sale of property under this title[,]" as required by subsections (i) and (ii); (*see* Pablo Decl. Ex. K [IRS Publication 594] at 8-10 (entitled "Levies");

•   "the administrative appeals available to the taxpayer with respect to such levy and sale and the procedures relating to such appeals[,]" as required by subsection (iii); (*see id.* at 4 ("Appeal Process" section) and 9);

•   "the alternatives available to taxpayers which could prevent levy on property (including installment agreements under section 6159)[,]" as required by subsection (iv); (*see id.* at 6 (including information on installment agreements and offers in compromise)); *and*

---

[4] Plaintiffs also had already been sent IRS Publication 1, "Your Rights as a Taxpayer." (Pablo Dec. ¶ 23 & Ex. S).

- "the provisions of this title and procedures relating to redemption of property and release of liens on property[,]" as required by subsection (iv); (*see id.* at 9-10 (sections entitled "Releasing a levy," "Releasing your property," "Returning levied property," "Selling your property," and "Redeeming your real estate").

The Final Notices/Notices of Intent to Levy received by Plaintiffs complied with § 6330(a)(3).

### d.  Plaintiffs Failed to Exhaust Administrative Remedies

As this Court has already recognized, in tax refund cases, each plaintiff must prove exhaustion. (*See* September 9, 2005 Order re Motion to Dismiss at 8-12.) Exhaustion is a jurisdictional requirement that cannot be waived. *Id.* at 11-12; *see also Oatman v. Dep't of Treasury*, 34 F.3d 787, 789 (9th Cir. 1994) ("The district court lacks jurisdiction over claims for refunds pressed by any potential class members who have not satisfied the procedural requirements of 26 U.S.C. §§ 6532 and 7422."); *Heisler v. U.S.*, 463 F.2d 375, 375 (9th Cir. 1972) (per curiam) (affirming judgment for the U.S. where there was "no showing that any other members of the purported class filed the requisite demands for refund").

The Government of Guam is aware of only one published opinion in which class certification in a tax refund case was permitted, *Appoloni I.* However, Plaintiffs can find no support for certification there. Not only were the issues to be decided much narrower, but the *Appoloni* court found certification possible only because Plaintiffs had "affirmatively shown that the prospective class consists of almost two hundred individuals who have complied with all of the jurisdictional prerequisites to a claim for a refund from the Government." *Id.* at 560.

Here, Plaintiffs failed to allege that they exhausted their administrative remedies. Instead, they claim –without factual support – that it would have been futile to claim a refund. As the Ninth Circuit has reaffirmed, the U.S. Supreme Court has long recognized that the exhaustion requirement in tax refund cases must apply, even if exhaustion would have been futile:

> An anticipated rejection of the claim, which the statute contemplates, is not a ground for suspending its operation. Even though formal, the condition upon which the consent to suit is given is defined by the words of the statute, and 'they mark the conditions of the claimant's right.' *Rock Island R.R. Co. v. United States*, 254 U.S. 141, 143 [(1920)]. Compliance may be dispensed with by waiver, as an administrative act, *Tucker v. Alexander, supra* [275 U.S. 228 (1927)]; but it is not within the judicial province to read out of the statute the requirement of its words, *Rand v. United States*, 249 U.S. 503, 510 [(1918)].

*Quarty v. United States*, 170 F.3d 961, 973 (9th Cir. 1999).

In fact, the Government of Guam is aware of only one court to squarely address the issue of whether administrative remedies are unavailable or otherwise inadequate when the taxpayer has not received a notice of their right to a hearing, in alleged violation of 26 U.S.C. §§ 6320 and 6330. It flatly rejected the argument. In *Turner-Simmons v. U.S.*, 2005 WL 1155222 *2 (N.D. Ga., March 21, 2005 (Slip Copy)), the Court held: "There is nothing in this regulation which indicates that it would not apply to a claim that the IRS violated 26 U.S.C. §§ 6320 or 6330. The plaintiffs, moreover, have not brought to the court's attention any facts or cases indicating that the IRS's administrative claims procedure . . . is inadequate. Thus, the court finds that there was an administrative remedy available to the plaintiffs and that the remedy was adequate." *Id.* As a result, the Court dismissed the complaint for lack of jurisdiction. *Id.*

### e. Plaintiffs' Claims Are Barred By the Statute of Limitations

Plaintiffs are also subject to the defense that the statute of limitations has run. Plaintiffs allege that they paid their 1998 and 1999 taxes on February 24, 2003.[5] (Am. Compl. ¶ 60). Section 6511 mandates that any "claim or refund of an overpayment of tax . . . shall be filed by the taxpayer within . . . 2 years from the time the tax was paid." Accordingly, the statute of limitations expired on February 24, 2005 based on Plaintiffs' allegations.

The statute of limitations is jurisdictional and "may not be waived." *UOP v. U.S.*, 99 F.3d 344, 347 (9th Cir. 1996). It may be raised at any time, by any party or on the court's own motion. *Id.* at 347 (citing *Pit River Home & Agricultural Co-op. Ass'n v. United States*, 30 F.3d 1088, 1099 (9th Cir.1994)). There is nothing in the statute of limitations that indicates that it would not apply to a claim that the IRS violated 26 U.S.C. §§ 6212, 6213, 6320 or 6330. Nor do Plaintiffs cite to a single case or statute, or set of facts, that would support a claim of estoppel.

Plaintiffs' argument that the Government of Guam is estopped from asserting that the statute of limitations has run is solely based on plaintiffs' claim that they "were never advised of their right to appeal." (MPA at 8). Yet, Plaintiffs *were* so advised. In July 2000, Plaintiffs received notice of their right to contact a Taxpayer Advocate. (Pablo Decl. ¶ 23 & Ex. S). In

---

[5] This allegation also is inaccurate. (Pablo Dec. ¶ 30).

addition, Plaintiffs received notice about available appeals processes in response with respect to liens and levies in October 2000 and again in March 2003. (Pablo Dec. ¶¶ 25, 33 & Exs. K, L). This is despite the fact that Plaintiffs waived their rights to appeal the assessment underlying any lien or levy. (Pablo Dec. Ex. Q (declaring they did "not wish to exercise my appeal rights with the Department of Revenue and Taxation or to contest in the District Court of Guam the findings in this report")). Accordingly, the Government cannot be estopped from asserting the statute of limitations against Plaintiffs, who had notice of their rights before they ever paid their taxes.

### f. The Government of Guam Has Ten Years to Collect on an Assessment—Such that It Can Recoup Any Monies Recovered

Even assuming that Plaintiffs had a viable claim, the Government of Guam has ten years to collect on any assessment. *See* 26 U.S.C. § 6502 ("Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun – (1) within 10 years after the assessment of the tax . . ."). In other words, even if an invalid lien or levy required the Government of Guam to return any monies collected, those monies could simply be collected again, as long as the collection takes place within ten years of the assessment. Here, the Dacanays' 1998 GTIT taxes due were assessed on August 8, 2002, whereas their 1999 GTIT taxes due were assessed on June 28, 2000. (Pablo Decl. Exs. M & T). The Dacanays agreed to these assessments and cannot contest their underlying liability. (*Id.*). Accordingly, since the Government may collect on these taxes until the years 2012 and 2010, respectively, a "successful" refund claim would not actually result in a net refund to Plaintiffs (or, for that matter, any class member whose assessment is less than ten years old).

### 2. Individual Issues Predominate

As demonstrated above, a wide spectrum of defenses may bar a class member's claims. In addition, Plaintiffs are subject to jurisdictional defenses – which, Plaintiffs have not shown are shared by the entire class –including Plaintiffs' failure to exhaust their administrative remedies, as well as the statute of limitations which expired on their 1998 and 1999 claims on February 24, 2005. (*See* September 9, 2005 Order re Motion to Dismiss at 14 ("claim or refund of an overpayment of tax . . . shall be filed by the taxpayer within . . . *2 years from the time the tax was*

*paid*") (emphasis in original) (quoting 26 U.S.C. § 6511) *and* Complaint ¶ 60).

Plaintiffs do not claim that they filed any refund claims or otherwise exhausted their administrative remedies. Furthermore, Plaintiffs' claim that the statute of limitations was equitably tolled can hardly apply to them when they received notice concerning the availability of a taxpayer advocate in July 2000, as well as received notice about available appeals processes no later than October 2000. (Pablo Decl ¶¶ 23, 25, Exs. S, K, L).

Plaintiffs cannot be trusted to "vigorously pursue" the class's claims when their own claims are worthless. *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1321 (9th Cir.), *vacated on other grounds*, 459 U.S. 810 (1982). Further, there is the distinct probability that Plaintiffs' interests will be antagonistic to other class members', because they will focus an inordinate amount of attention and resources to litigate the defenses unique to their claims. *Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003) (requiring an "absence of antagonism, a sharing of interests between representatives and absentees" for certification) (internal citations omitted).

The spectrum of available defenses against Plaintiffs not only demonstrates Plaintiffs' *a*typicality, but it also raises questions of whether *any* taxpayer may be "typical" of a class of taxpayers seeking refunds, where individualized issues predominate. In tax refund cases, each plaintiff must prove exhaustion and the validity of his or her claim. *See Oatman v. Dep't of Treasury*, 34 F.3d 787, 789 (9th Cir. 1994) ("The district court lacks jurisdiction over claims for refunds pressed by any potential class members who have not satisfied the procedural requirements of 26 U.S.C. §§ 6532 and 7422.")

The claims themselves are based on one of three different sets of notice statutes that apply to different taxpayers in different situations. Furthermore, the applicability of each defense requires a very individualized factual investigation. Without significant factual investigation, it is unclear whether a particular taxpayer is even entitled to a notice of deficiency, notice of lien or notice of levy; whether taxes were ever paid and whether they were paid voluntarily or pursuant to a specific lien or levy; whether a lien or levy has even been executed; whether one has received actual notice of the right to appeal and/or contact a taxpayer advocate, and when; whether one has waived the right to appeal or receive notice. Accordingly, the named Plaintiffs are certainly atypical, and it is indeed far from clear that Plaintiffs could ever find a "typical" taxpayer to

represent a class of such varied interests, claims, and defenses.

**B.    The Plaintiffs Cannot Demonstrate Adequacy of Representation**

Adequacy of representation is crucial to insuring due process of law to the unnamed class members. If they are to be conclusively "bound by the judgment" in an action prosecuted by a representative, they must have adequate representation. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940); *see also Crawford v. Honig*, 37. F.3d 485, 487 (9th Cir. 1994). As a result, before certifying a class, the Court must first determine that the class attorney is qualified to be the guardian of the class, with fiduciary duties to each member. *See, e.g., In re Agent Orange Prod. Liab. Litig*, 800 F.2d 14, 18 (2d Cir. 1986).

**1.    Concerns as to the Adequacy of Counsel**

Plaintiffs in this case are represented by Mr. Zamsky, a local attorney who had been admitted to the Guam Bar, and Mssrs. Kelley and Charella, two California attorneys from the law firm of Kirtland & Packard, LLP who had been admitted pro hac vice. However, on June 10, 2006, Mr. Zamsky was removed from the Guam Bar for non-payment of dues by Order of the Guam Supreme Court. (Dec. of Daniel M. Benjamin, filed herewith ("Benjamin Dec."), at Ex. 1). It appears from the Order that Mr. Zamsky may still apply for reinstatement. (*See id.*) However, at the moment suspension or disbarment from the Guam Bar precludes Mr. Zamsky from practicing before this Court. Guam Dist. Ct. Gen. R. 17.1 ("continuing membership . . . [is] limited to . . . active members in good standing of the Territorial Bar of Guam"). Because he is designated local counsel, the status of Mr. Zamsky's Guam Bar membership affects the *pro hac* admissions of mainland co-counsel for Plaintiffs. *See* Guam Dist. Ct. Gen. R.  17.1(e) ("An attorney applying to practice before this Court under subsection (d) of this Rule, shall designate an attorney who is an active member *in good standing* of the Bar of this Court, who resides in and has an office in this District, as co-counsel.") (emphasis added). With these questions, it is not presently possible to determine that Plaintiffs' counsel—none of whom may practice before the Court at the moment—can adequately represent the proposed class.

**2.    The Dacanays' Lack of Adequacy as Proposed Class Representatives**

Plaintiffs themselves have not proven that they can adequately represent the class. Adequacy of representation may be shown by evidence that the representative's individual

interests are the same or similar to the other class members. In this sense, the adequacy of Plaintiffs as representatives overlaps with whether Plaintiffs are "typical" members of the class.

As discussed, Plaintiffs are not "typical" of the class. Their claims are subject to a wide range of unique defenses. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (refusing to certify class represented by a plaintiff subject to unique defenses). Further, it appears they have not even been personally injured, and thus do not have standing to bring these claims on behalf of the class. *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) (reversing certification where plaintiff failed to show "they personally have been injured").

There also is a significant question as to whether Plaintiffs' claims are representative. In certifying *Appoloni*, the court reasoned that the "[t]he size of the claims of the class members make it unlikely that any class member would have a greater interest in pursuing their claim on an individual rather than class basis." 218 F.R.D. at 563 (noting that the amounts claimed by the three of the members were $203, $182 and 182, respectively). Here, even if Plaintiffs' claims were not barred by a multitude of defenses and waivers, there is no evidence that the monetary damages they seek are in any way representative of the claims of other class members.

For example, there are 59 taxpayers paid $7,766,863 in taxes sometime after having a levy asserted against them and after receiving notices of deficiency that did not contain information about taxpayer advocates. (Benjamin Dec. Ex. 5 at nos. 22 and 25). Assuming each had a valid claim to a refund, each taxpayer's claim, on average, would be worth $131,642. In contrast, Plaintiffs claim to have paid only $3,514.09 outstanding taxes. (Am. Compl. ¶ 60). Even if Plaintiffs were entitled to a full refund (which they are not), their claim would amount to a mere fraction—less than three percent—of the average value of the claims of other potential class members. This disparity not only raises serious questions as to whether their claims are typical of the class, but also suggests that their interests are not adequately aligned to the other class members who may have significantly higher claims, and may be better off pursuing them in individual suits. This provides an additional, independent basis for denial of certification.

## C. The Plaintiffs Cannot Demonstrate Commonality

Rule 23(a)(2) requires that there must be "questions of law or fact common to the class." In order to find commonality, the requested relief must "turn on questions of law applicable in the

same manner to each member of the class." *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982). Plaintiffs have not raised a single issue of fact or law that appears dispositive of their rights, much less those of any potential class members.

Without going individually through all fourteen "issues" presented by Plaintiffs (*see* MPA at 12-13), it is clear that <u>none of the issues are common to the entire class</u> because there are *three* very distinct sets of statutes each apply to different groups of taxpayers, and offer different types of protection in different situations. Indeed, the differences between the types of notices, and the alleged non-receipt versus inadequate notices makes it clear that this case implicates numerous potential subclasses, while Plaintiffs seek only to certify a single monolithic class.

For example, the statutes regarding notices of deficiency protect only those taxpayers who pay taxes pursuant to assessments by DRT (or the IRS). 26 U.S.C. § 6212(a) and ("[i]f the Secretary determines that there is a deficiency...he is authorized to send notice of such deficiency"); *see* 26 U.S.C. § 6213(b), (d) (notice not required for assessments made to correct taxpayers' mathematical errors, or where the taxpayer has waived the right to notice). In contrast, the statute regarding notices of intent to levy only apply to those taxpayers whose property are actually levied. 26 U.S.C. § 6330 (a)(2) (requiring notices "before the day of the first levy").

The relief accorded for an invalid notice of levy is different than the relief for an invalid notice of deficiency. An invalid notice of levy cannot invalidate the underlying assessment or form the basis for a tax refund claim. Instead, the IRC provides that property levied without valid notice *may* be returned to the taxpayer, *if* the taxpayer has first filed a request for the return of the property within nine months from the date of levy. 26 U.S.C. § 6343(b) ("If the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return – (1) the specific property levied upon" "at any time." Also, "the amount of money levied . . . may be returned at any time before the expiration of 9 months from the date of such levy.")

The statute regarding notices of liens apply to yet another group of taxpayers – taxpayers against whom the government filed a notice of tax lien. 26 U.S.C. § 6323(j)(1) provides only that "[t]he Secretary *may* withdraw a notice of a lien filed under this section and this chapter shall be applied as if the withdrawn notice had not been filed, if the Secretary determines that— **(A)** the filing of such notice was premature or otherwise not in accordance with administrative procedures

. . . ." The lien itself is not invalidated, since liens arise automatically upon a valid assessment of the taxpayer's tax liability, regardless of filing or notice. 26 U.S.C. §§ 6321, 6322; *United States v. McDermott*, 507 U.S. 447, 448 (1993) ("[u]pon the assessment, the law created a lien in favor of the United States")).

Here, where relief turns on different questions of law, plaintiff can hardly show that there are any common issues that are of such importance that it is actually more economical or efficient to litigate the parties' claims as a class action. *See Califano v. Yamasaki*, 442 U.S. 682, 701 (1979) (finding commonality where there is a single "ultimate question" "applicable in the same manner to each member of the class," and where "[i]t is unlikely differences in the factual background of each claim will affect the outcome of the legal issue[,]" such that "the class-action device saves the resources of both the courts and the parties"). Rather, here, the application of the law will turn heavily on the factual background of each claim (such as whether property was levied, whether the taxpayer requested a return of levied property, whether the request was made with nine months, whether the underlying assessment was valid), as will the types of relief available to each class member.

For example, plaintiff claims that "[w]hether the Notices of Deficiency sent to Plaintiffs by the Government of Guam after July 22, 1998 are void" is a "common" issue. (MPA at 2-12). Yet, as explained above, the issue can only be relevant to those taxpayers who were actually entitled to a notice of deficiency. In fact, this issue is entirely irrelevant to Plaintiffs who were never entitled to a notice of deficiency.

Furthermore, as discussed previously with respect to "typicality," different taxpayers will be subject to the jurisdictional issues of exhaustion of administrative remedies and the statute of limitations, creating divisions between those who may be barred by those defenses, and those who have met the jurisdictional requirements.

### D.     Plaintiffs Also Failed to Meet the Numerosity Requirement

#### 1.     Plaintiff failed to identify a *single* taxpayer who is a class member

Plaintiffs bears the burden of "provid[ing] concrete evidence" that the number of parties involved are too numerous to permit joinder of the parties. *Fisher v. United States*, 69 Fed. Cl. 193, 199 (2006). Here, Plaintiffs claim that "the numerosity requirement is easily met" based on

the Government of Guam's interrogatory responses, which state, for example, that "115 taxpayers" "PAID INCOME TAXES anytime after having been issued a Notice of Deficiency which did not include notice" regarding the taxpayer advocate. (Benjamin Dec. Ex. 3 at no. 4). Yet, this number is meaningless without any evidence regarding how many, if any, of the 115 taxpayers were subject to the protection of the "notice of deficiency" statutes.

The "notice of deficiency" statutes do not protect *all* taxpayers – only those who pay taxes pursuant to assessments of deficiency by the DRT (or the IRS). *See* 26 U.S.C. §§ 6212(a) and 6213(a). Accordingly, evidence that numerous persons paid taxes does not satisfy the numerosity requirement. Plaintiff must show that there exist numerous taxpayers who paid taxes pursuant to assessments of deficiency made after the service of notices of deficiency that failed to contain taxpayer advocate information. Here, Plaintiffs fall far short of even showing that there exists a *single* taxpayer in this category. They themselves do not fall into this category because they agreed to their tax liability – no assessment of deficiency was ever made against Plaintiffs.

In *Fisher*, the plaintiff sought to certify a class of policyholders whom appeared to have paid taxes on their respective distributions from the demutualization of their life insurance company. 69 Fed. Cl. at 195. Plaintiff offered evidence that there were 500,000,000 policyholders. *Id.* at 198. However, because the putative class sought refunds of the taxes paid, plaintiff had to prove that, of the 500,000,000, some number also satisfied the jurisdictional requirement of first filing refund claims with the IRS. *Id.* at 196. Plaintiff argued that numerosity was met because even "if only 1/2 of one percent of a potential 50,000,000 policyholders filed refund claims, that would still be 250,000 claimants." *Id.* at 198. The Court held that plaintiff failed to satisfy numerosity because she offered no concrete evidence – only speculation – that any of the policyholders other than herself actually filed a claim. *Id.* at 198-199.

Accordingly, Plaintiffs' speculation that some "numerous" portion of taxpayers identified in the Government of Guam's interrogatory responses paid their taxes pursuant to assessments of deficiency is insufficient to meet their burden on numerosity. The same is true for Plaintiffs' allegations regarding the "numerosity" of taxpayers owed proper notices of lien or notices of intent to levy. All taxpayers are not subject to the protections of these notice statutes. For example, § 63309(a) only requires that notices of intent to levy be sent to taxpayers whose

property will be levied against. As a result, Plaintiffs' numerosity allegations, which fail to set forth any concrete evidence regarding how many persons entitled to receive such notices did not receive them, fail to meet their burden for class certification.

> **2.** **"Numerosity" requires that Plaintiffs show there are taxpayers who have met the jurisdictional requirements for a tax refund claim**

As in *Fisher*, Plaintiffs here seek to certify a class for purposes of obtaining tax refunds. As a result, to prove numerosity, Plaintiffs must present evidence that there exist numerous persons who, in addition to meeting the other class definition requirements, also filed refund claims within the applicable statute of limitations period. *Fisher*, 69 Fed. Cl. at 198-199 (requiring "concrete evidence" of existence of class members who have satisfied jurisdictional requirements); *see also Appoloni v. Unites States*, 218 F.R.D. at 559 (because a "refund claim with the I.R.S. is a jurisdictional prerequisite to a refund action in federal district court[,]" "class counsel possessed copies of claims for refunds submitted by all teachers and copies of denial letters from Internal Revenue Service") (citation omitted).

Again, here, Plaintiffs have not shown that any taxpayers have met the jurisdictional requirements of having filed a refund claim with DRT, much less having done so within the applicable limitations period. This provides yet another independent basis on which to reject Plaintiffs' numerosity allegations. *Fisher*, 69 Fed. Cl. at 198-199.

> **3.** **Plaintiff has failed to allege that "surrounding circumstances" support a finding of numerosity.**

Assuming *arguendo* that Plaintiffs had put forth sufficient evidence regarding the number of potential class members, numbers "do not alone determine impracticability" of joinder. *Harriss v. Pan-Am.*, 74 F.R.D. 24, 45 (C.D. Cal. 1977). Rather, numerosity "must be viewed in the light of all the circumstances, including the magnitude of the claim and the degree of dispersion of the prospective plaintiffs." *Id.*; 7A Charles Alan Wright et al., Federal Practice and Procedure § 1762 (3d ed.2005) (numerosity "depends on the particular facts of each case").

Here, Plaintiffs fail to put forth any evidence supporting a finding of numerosity. Plaintiffs simply conjecture that the class members "are geographically dispersed," and speculate that, "most likely not all Class members remain on Guam." (MPA at 2). They offer no evidence in support of this naked assertion. Nor do they discuss any other factors affecting the numerosity

1    determination, such as the magnitude of the claim.

2        Had Plaintiffs offered any evidence regarding actual numbers, their failure to

3    contextualize those numbers with the surrounding circumstances of the potential class members

4    would provide an independent basis for rejecting their numerosity allegations. *Abel v. United*

5    *States,* 18 Cl.Ct. 477, 478-79 (1989) (holding that "the numerosity requirement has not been

6    satisfied[,]" because while joinder of 1,218 plaintiffs "is large, it is by no means unmanageable").

7    **II.     THIS ACTION DOES NOT SATISFY FED. R. CIV. PROC. 23(B)**

8        Plaintiffs have taken a scattershot approach to class certification, asserting that this case is

9    subject to certification under each of the alternative options presented by Fed. R. Civ. Proc. 23(b).

10   However, Plaintiffs have not met their burden under any of the four possible standards.

11           **A.     This Case Cannot Be Certified under Fed. R. Civ. Proc. 23 (b)(3) Because**
                    **Common Issues Cannot Predominate in this Tax Refund Case**

12       To certify a class under Fed. R. Civ. Proc. 23(b)(3), Plaintiffs must show that "questions

13   of law and fact common to the members of the class predominate over questions affecting only

14   individual members." Fed. R. Civ. Proc. 23(b)(3). The "predominance" requirement "tests

15   whether proposed classes are sufficiently cohesive to warrant adjudication by representation."

16   *Amchem*, 521 U.S. at 623. Yet, here, Plaintiffs have been unable to even show that there is

17   sufficient "commonality" under Rule 23(a). For all of the reasons discussed in the

18   "commonality" section, Plaintiffs cannot show predominance. *Amchem*, 521 U.S. at 624 (finding

19   that the district court could not rely on commonality to show predominance because the

20   "predominance criterion is far more demanding").[6]

21       The varying questions of law and fact, including the jurisdictional questions concerning

22   exhaustion and the statute of limitations that rely so heavily on the peculiarities of each claimants'

23   background, as well as the spectrum of defenses that could apply to the potential class members,

24   _____

25       [6] Nor have Plaintiffs explained how they would provide the notice required under Rule
     23(b)(3). Taxpayer returns and related information are confidential under 26 U.S.C. § 6103(a).
26   Plaintiffs acknowledged this limitation when they did not move to compel responses to
     interrogatories that would have required the Government of Guam to violate their duties under §
27   6103(a). (*See* Benjamin Dec. Ex. 2 (Defendant's responses, which decline to answer questions
     requiring confidential taxpayer information); Docket No. 35 (Plaintiffs' motion to compel other
28   responses, but not responses to these interrogatories).

     *CIVIL CASE NO. 05-00017*                    22

all weigh heavily against finding predominance. *Amchem*, 521 U.S. at 624 ("Given the greater number of questions peculiar to the several categories of class members, and to individuals within each category, and the significance of those uncommon questions, any overarching dispute . . . cannot satisfy the Rule 23(b)(3) predominance standard.").

**B.     This Case Cannot Be Certified under Fed. R. Civ. Proc. 23(b)(1)(A) Because the Government Does Not Face "Incompatible Standards" of Conduct**

Plaintiffs claim that the class may be certified pursuant to Fed. R. Civ. Proc. 23(b)(1)(A) because "separate actions could result in inconsistent adjudications regarding whether a given plaintiff's claims are time barred." (MPA 20). However, Rule 23(b)(1)(A) "focuses on the rights of parties opposing the class." *In re Syncor Erisa Litig.*, 227 F.R.D. 338, 346 (C.D. Cal. 2005). It allows certification only where "the prosecution of separate actions by . . . individual class members would create a risk of [] inconsistent or varying adjudications," *and* where these varying adjudications "would establish incompatible standards of conduct *for the party opposing the class*." Rule 23(b)(1)(A) (emphasis added). The Ninth Circuit has rejected the argument that the risk that identically situated individuals will receive contrasting verdicts satisfies Rule 23(b)(1)(A). "The phrase 'incompatible standards of conduct' refers to the situation where 'different results in separate actions would impair the opposing party's ability to pursue a uniform continuing course of conduct.' Rule 23(b)(1)(A) certifications requires more, however, 'than a risk that separate judgments would oblige the opposing party to pay damages to some class members but not to others or to pay them different amounts....'" *Zinser*, 253 F.3d at 1193 (citation omitted); *In re Bendectin Prod. Liab. Litig.*, 749 F.2d 300, 305 (6th Cir. 1984) ("The fact that some plaintiffs may be successful in their suits against a defendant while others may not is clearly not a ground for invoking Rule 23(b)(1)(A).").

Plaintiffs have not alleged, much less proven, that without the class action device, the Government of Guam's ability "to pursue a uniform continuing course of conduct" will somehow be impaired. At most, what they are alleging is that some taxpayers might have received refunds, and some might not. This does not satisfy *Zinser*. Accordingly, they have failed to meet their burden of establishing the requirements for certification entailed in Rule 23(b)(1)(A).

C.  **This Action Cannot Be Certified Under Rule 23(b)(1)(B) Because No Showing Has Been Made that This is a "Limited" or "Common" Fund Case**

"Certification under Rule 23(b)(1)(b) "typically provides for certification of a non-opt out class where each putative class member claims entitlement to a pro rata share of a 'fund with a definitely ascertained limit[.]'" *In re Phenylpropanolamine (PPA) Products Liability Litigation*, 208 F.R.D. 625, 633 (W.D. Wa. 2002) (quoting *Zinser*, 253 F.3d at 1197); *see also In re Paxil Litigation*, 212. F.R.D. 539, 553 (C.D. Cal 2003) ("The purpose of Rule 23(b)(1)(B) is to protect plaintiffs in situations where separate lawsuits might exhaust a defendant's resources such that earlier plaintiffs might recover at the expense of later plaintiffs."). This Rule "is narrowly construed and courts are wont to certify under Rule (23)(b)(1)(B) except in the most compelling situations." *In re Paxil Litig.*, 212. F.R.D. at 553.

This case does not involve a fund within an ascertainable limit; it involves tax refund claims. The value of the total claims is dependent on the total amount sought, and not on some limit as to the size of the available funds. Under such circumstances, Plaintiffs must present, "at a minimum, evidence as to the assets and potential insolvency of the defendants involved in this cases." *In re PPA Products Liability Litig.*, 208 F.R.D. at 634.

Here, there is no risk of exhaustion of a common fund. The Organic Act of Guam protects against a tax refund judgment making the Government insolvent by providing that such judgments are paid by the Governor from "unencumbered funds." 48 U.S.C. § 1421i(h)(2). The obvious implication of this is that no payment is due on a judgment until such "unencumbered funds" are available. *See id.* Thus, while it may well be that the Government could not immediately make all allegedly owed refunds, this simply means that each plaintiff would wait in line until funds became available to pay the judgment. No risk of insolvency or permanent depletion of a fund exists and Rule 23(b)(1)(b) is not satisfied.

D.  **This Action Cannot Be Certified as an Action for Injunctive or Declaratory Relief under Rule 23(b)(2) Because Its Primary Purpose Is Money Damages**

In *Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003), the Ninth Circuit established that "before allowing [Fed. R. Civ. Proc. 23](b)(2) certification a district court should, at a minimum, satisfy itself of the following: (1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the

injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits." *Id.* at 950. Plaintiffs here have shown neither.

There is no indication that Plaintiffs would have brought suit "in the absence of a possible monetary recovery." Indeed, here, monetary damages are the "essential goal" in this litigation. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 860 (9th Cir. 2001) (denying certification under Rule 23(b)(2), where money was the "essential goal"); *see* September 9, 2005 Order re Motion to Dismiss at 13 ("As Defendant has correctly observed, Plaintiffs seek to use Claims 2 and 3 as predicates for obtaining refunds."). Class certification is improper where plaintiffs' requests for "declaratory and injunctive relief" are little more than a guise to obtain all of the component parts of a refund suit. *See, e.g., Zinser*, 253 F.3d at 1195 ("Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive.").

Indeed, this Court already held that injunctive and declaratory relief is entirely unnecessary to obtain the right to file a legitimate refund claim. (September 9, 2005 Order re Motion to Dismiss at 13-14 ("Plaintiffs here have not shown irreparable harm inasmuch as there is an adequate remedy at law in the form of a refund suit.")). This same holding was reached in *Marangi v. Govt. of Guam*, 319 F. Supp. 2d 1179, 1186 (D. Guam 2004) (finding that the notice of deficiency was inadequate, but denying injunctive relief where plaintiff had "adequate legal remedy" of filing for a refund). There is no danger of any future or recurring harm to taxpayers; the Government of Guam has been complying with all of the notice requirements for well over a year now. Instead, Plaintiffs appear to seek declaratory and injunctive relief for the sole purpose of allowing "class" members to pursue otherwise jurisdictionally barred refund claims.

## CONCLUSION

For the forgoing reasons, the motion for class certification should be denied.

Dated this 16th day of June, 2006.

OFFICE OF THE GOVERNOR OF GUAM
CALVO & CLARK, LLP
Attorneys at Law
Attorneys for *Government of Guam*

By: _____
DANIEL M. BENJAMIN