1 | **SHANNON J. TAITANO, ESQ.**
**OFFICE OF THE GOVERNOR OF GUAM**
2 | Ricardo J. Bordallo Governor's Complex
Adelup, Guam 96910
3 | Telephone: (671) 472-8931
4 | Facsimile: (671) 477-6666

5 | **EDUARDO A. CALVO, ESQ.**
**DANIEL M. BENJAMIN, ESQ.**
6 | **CALVO & CLARK, LLP**
7 | Attorneys at Law
655 South Marine Corps Drive, Suite 202
8 | Tamuning, Guam 96913
Telephone: (671) 646-9355
9 | Facsimile: (671) 646-9403

10 | Attorneys for *the Government of Guam*

11 | IN THE UNITED STATES DISTRICT COURT
12 | DISTRICT OF GUAM

13 | HENRY S. DACANAY and LAURA LYNN
DACANAY,
14 |

CIVIL CASE NO. 05-00017

**MEMORANDUM OF POINTS AND**
**AUTHORITIES IN SUPPORT OF THE**
**GOVERNMENT OF GUAM'S**
**MOTION FOR JUDGMENT ON THE**
**PLEADINGS OR, IN THE**
**ALTERNATIVE, SUMMARY**
**JUDGMENT**

Plaintiffs,

15 |
16 | vs.
17 | GOVERNMENT OF GUAM,
18 |
Defendant.
19 |

**FILED**
DISTRICT COURT OF GUAM

JUN 3 0 2006

MARY L.M. MORAN
CLERK OF COURT

*CIVIL CASE NO. 05-00017*
{G0013395.DOC;1}

**ORIGINAL**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................ i

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...................................................................................................................... 1

PROCEDURAL HISTORY ...................................................................................................... 2

STATEMENT OF FACT ........................................................................................................... 4

    A.    Assessment of the 1998 & 1999 Taxes .......................................................................... 4

    B.    The Collections Process ................................................................................................. 5

ARGUMENT ................................................................................................................................ 6

I.       THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES ...................................................................................... 8

II.      THE STATUTE OF LIMITATIONS BARS PLAINTIFFS' CLAIMS .................. 11

    A.    The Complaint Is Untimely ....................................................................................... 11

    B.    Tolling or Estoppel Are Not Available as a Matter of Law ...................................... 12

    C.    Tolling or Estoppel Cannot Apply Because the Undisputed Facts Show that Plaintiffs Were Advised of Their Rights—or at least Put on Inquiry Notice ................. 12

III.     PLAINTIFFS CANNOT ESTABLISH VALID CLAIMS ON THE MERITS AS A MATTER OF LAW ........................................................................................................... 14

    A.    Plaintiffs Were Not Entitled to "Notices of Deficiency" as a Matter of Law .......... 15

        1.    Plaintiffs Waived Their Right to a Notice of Deficiency as to Tax Year 1998 pursuant to 26 U.S.C. § 6213(a) ............................................................................... 15

        2.    Plaintiffs Were Not Entitled to a Notice of Deficiency for Tax Year 1999 as a Matter of Law ............................................................................................................. 16

        3.    The Tax Year 1999 Claim Also Fails Because It Was Wholly Satisfied By Administrative Offset, Which Does Not Require Notice ........................................... 16

    B.    Plaintiffs Have No Claim Regarding the Notice of Levy ......................................... 17

        1.    The Only Available Remedy for a Defective Notice of Levy Is the Return of the Levied Property—Not a Tax Refund Action ............................................................... 17

        2.    The Government Never Levied Against the Dacanays ............................................ 17

        3.    The Dacanays Received Proper Notices of Intent to Levy ..................................... 18

    C.    Plaintiffs Have No Claim Regarding the Notice of Lien ........................................... 19

        1.    The Remedy for a Defectively Recorded Lien or Notice of Lien Is Cancellation of the Recording and Notice—Not a Tax Refund .......................................................... 19

        2.    Plaintiffs Never Paid Any Taxes Pursuant to Any Recorded Lien, and So Have No Claim Regarding the Notice of Lien Issue ........................................................... 20

CONCLUSION ........................................................................................................................ 20

# TABLE OF AUTHORITIES

Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................. 7
*Bank of Am. v. Blaz*, 539 F.2d 1226 (9th Cir. 1976) .................................................. 1
*Bear Valley Mutual Water Co. v. Riddell*, 493 F.2d 948 (9th Cir. 1974) ....................... 8
*Boyd v. United States*, 762 F.2d 1369 (9th Cir. 1985) ............................................ 8, 10
*British Airways Bd. v. Boeing Co.*, 585 F.2d 946 (9th Cir. 1978) ................................ 7
*Brummett v. United States*, 218 F. Supp. 2d 1253 (D. Or. 2002) .............................. 12
*California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466 (9th
   Cir. 1987) .......................................................................................................... 7
*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...................................................... 7
*Constitution Bank v. DiMarco*, 815 F. Supp. 154 (E.D. Pa. 1993) ............................ 6
*Danoff v. United States*, 324 F. Supp. 2d 1086 (C.D. Cal. 2004) ............................. 12
*Forsberg v. Pacific N.W. Bell Tel. Co.*, 840 F.2d 1409 (9th Cir. 1988) ...................... 7
*Fulgoni v. U.S.*, 23 Cl. Ct. 119 (1991) ................................................................ 16
*Gabelman v. Commissioner*, 86 F.3d 609 (6th Cir. 1996) ..................................... 11
*Ileto v. Glock Inc.*, 349 F.3d 1191 (9th Cir. 2003) ................................................ 6
*Internal Revenue Service v. McDermott*, 507 U.S. 447 (1993) ................................ 19
*Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) ............................ 13
*Joyce Barry*, 48 BR 600 (Bankr. M.D. Tenn. 1985) ............................................. 15
*Knoefler v. Schneider*, 565 F. 2d 1072 (9th Cir. 1977) ......................................... 16
*Lane v. Pena*, 518 U.S. 187 (U.S.D.C., 1996) ...................................................... 8
*Lavin v. Marsh*, 644 F.2d 1378 (9th Cir. 1981) .................................................... 14
*Lyddon & Co. (America) Inc. v. United States*, 158 F. Supp. 951 (Ct. Cl. 1958) ......... 16
*Martinez v. United States*, 595 F.2d 1147 (9th Cir. 1979) ...................................... 8
*Marx v. Govt. of Guam*, 866 F.2d 294 (9th Cir. 1989) ........................................... 8
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ................. 7, 8
*Monge v. Smyth*, 229 F.2d 361 (9th Cir. 1956) ................................................... 15
*Morgan v. Heckler*, 779 F.2d 544 (9th Cir.1985) ................................................ 12
*Mukherjee v. I.N.S.*, 793 F.2d 1006 (9th Cir. 1986) ............................................. 12
*Quarty v. United States*, 170 F.3d 961 (9th Cir. 1999) ........................................ 8, 9
*Rand v. United States*, 249 U.S. 503 (1918) ....................................................... 9
*RHI Holdings, Inc. v. United States*, 142 F.3d 1459 (Fed. Cir. 1998) ...................... 12
*Rock Island R.R. Co. v. United States*, 254 U.S. 141 (1920) .................................. 9
*Santiago v. INS*, 526 F.2d 488 (9th Cir. 1975) .................................................... 12
*Shwarz v. United States*, 234 F.3d 428 (9th Cir. 2000) .......................................... 6
*Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176 (9th Cir. 2001) ...................................... 12
*T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626 (9th Cir. 1987) ........ 7
*Thomasson v. United States*, 1997 WL 220321 (N.D. Cal. April 21, 1997) ............... 12
*Tucker v. Alexander*, 275 U.S. 228 (1927) .......................................................... 9
*Turner-Simmons v. U.S.*, 2005 WL 1155222 (N.D. Ga., March 21, 2005) ............... 10
*United States v. Brockamp*, 519 U.S. 347 (1997) .......................................... 2, 11, 12
*United States v. Gilbert*, 1991 WL 195585 (D. Ariz 1991) .................................... 15
*United States v. Spence*, 110 F. Supp. 2d 1335 (D. N.M. 1999) ............................. 15
*UOP v. U.S.*, 99 F.3d 344 (9th Cir. 1996) .......................................................... 11
*Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136 (9th Cir. 2003) ...................... 7

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000) ............................................................................ 7

<u>Statutes</u>

26 U.S.C. § 6320 ............................................................................................................. 11, 21
26 U.S.C. § 6321 ..................................................................................................................... 20
26 U.S.C. § 6322 ..................................................................................................................... 20
26 U.S.C. § 6330 ............................................................................................................... 18, 19
26 U.S.C. § 6343 ..................................................................................................................... 18
26 U.S.C. § 6402 ..................................................................................................................... 17
26 U.S.C. § 6662 ....................................................................................................................... 4
48 U.S.C. § 1421i ...................................................................................................................... 2

<u>Rules</u>

Fed. R. Civ. Proc. 12 ................................................................................................................ 7
Fed. R. Civ. Proc. 56 ............................................................................................................ 7, 8

1    Defendant Government of Guam respectfully submits this memorandum of points and
2    authorities in support of its motion for judgment on the pleadings or, in the alternative, summary
3    judgment under Fed. R. Civ. Proc. 12(c) and 56, respectively, in this action brought by Plaintiffs
4    Henry and Laura Lynn Dacanay (the "Dacanays" or "Plaintiffs").

5                                    **INTRODUCTION**

6            The Government of Guam brings this motion for judgment on the pleadings or, in the
7    alternative, summary judgment because Plaintiffs have neither established the Court's jurisdiction
8    over this case nor stated valid claims as a matter of law. Plaintiffs claim that they did not receive
9    or received defective (1) "Notices of Deficiency," (2) "Notices of Liens," and (3) "Notices of
10   Intent to Levy," in alleged violation of the IRS Restructuring and Reform Act of 1998.

11           However, Plaintiffs never filed an administrative claim. Indeed, the Court previously
12   dismissed this action due to this failure to exhaust. Although Plaintiffs amended, their amended
13   complaint does not allege that they exhausted their remedies. Rather, it seeks to plead futility.
14   But, futility is not an exception to the exhaustion requirement in a tax refund case, especially
15   where the claimed futility is only that the claim would have been rejected (and not that the claim
16   could not have been filed at all). Here, Plaintiffs have failed to plead that an administrative claim
17   could not have been filed, and the undisputed evidence shows it could have been.

18           The statute of limitations (which is jurisdictional in tax refund cases) also bars Plaintiffs'
19   amended complaint. The Court has once before dismissed Plaintiffs' complaint on the statute of
20   limitations, but it granted leave to amend to demonstrate that the claims were timely. In their
21   amended complaint, however, Plaintiffs have instead sought to plead that the statute of limitations
22   should be tolled or that the Government is estopped from asserting the statute. That is directly
23   contrary to *United States v. Brockamp*, 519 U.S. 347 (1997), which held that there are no
24   equitable exceptions to the statute of limitations in refund cases. Moreover, Plaintiffs' theory of
25   tolling or estoppel is based upon an alleged failure to provide notice of their claims. Contrary to
26   that, the undisputed facts show that notice was provided, and that at the very minimum there was
27   sufficient inquiry notice to start the running of the statute of limitations.

28

1    Even setting aside these jurisdictional defects, Plaintiffs do not have valid claims.

2    Plaintiffs were not entitled to "Notices of Deficiency" as a matter of law.  They agreed to the

3    assessment of their 1998 taxes after an audit and waived their right to further notice by executing

4    a Form 4549.  And they admitted to their tax liability for tax year 1999, which means they were

5    not entitled to a notice of deficiency at all.

6        Similarly, Plaintiffs have no valid claims as to the notices of liens or levies.  They paid no

7    taxes after such notices were sent for the applicable year.  Their assets were never levied.  And

8    the lien against them was lifted after ten days when Plaintiffs advised the Guam Department of

9    Revenue & Taxation ("DRT") that they were entitled to refunds of other taxes that would offset

10   any tax due.  Such offsets ultimately satisfied the amounts due, and the rules requiring notices of

11   liens or levies do not apply to offsets.  Plaintiffs experienced no injury and have no claim.

12                                      **PROCEDURAL HISTORY**

13       The Dacanays filed this putative class action on June 8, 2005 seeking tax refunds for tax

14   years 1998 and 1999 based upon the alleged failure of the Government Guam to send or provide

15   adequate (1) notices of deficiency; (2) notices of lien; and (3) notice of intent to levy.  (Docket

16   No. 19 at 4).[1]  Prior to filing this action, the Dacanays never filed an administrative claim with

17   DRT for a refund of their 1998 or 1999 GTIT taxes raising any of these alleged grounds.  (Pablo

18

19

20

_____

21       [1] The relevant laws are alleged to apply to Guam based on the mirroring of the Internal
     Revenue Code ("IRC") to create the Guam Territorial Income Tax ("GTIT").  In enacting the
22   Organic Act of Guam, Congress created the GTIT to mirror almost all of the Internal Revenue
     Code (Title 26 of the U.S.C.) and to provide a source of revenue to fund the Government of
23   Guam.  *See* 48 U.S.C. § 1421i(a) ("The income-tax laws in force in the United States of America
     and those which may hereafter be enacted shall be held to be likewise in force in Guam...."); *Bank*
24   *of Am. v. Blaz*, 539 F.2d 1226, 1227-28 (9th Cir. 1976) (per curiam).  However, the tax collected
     by the Government of Guam is payable to the Government of Guam.  *Id.* § 1421i(b),(c).  The
25   Organic Act also provides for the substitution of terms in the Internal Revenue Code so that its
     application in Guam is clear.  48 U.S.C. § 1421i(e) (stating that "Guam" is substituted for "United
26   States"; "Governor or his delegate" for "Secretary or his delegate" and "Commissioner of Internal
     Revenue").  Further, the language and nomenclature of the IRC must be read to change or omit
27   any other language where this is "necessary to effect the intent of this section."  *Id.*  Finally, a
     section of the IRC will not apply in Guam if manifestly inapplicable to Guam or incompatible
28   with the intent of the Organic Act.  *Id.* § 1421i(d)(1).

1    Dec. ISO Motion for SJ at ¶ 4).² Specifically, they never filed an administrative claim requesting

2    a refund on the basis that they did not receive a notice of deficiency, notice of intent to levy, or

3    notice of lien, or that any such notice they received was deficient. (*Id.*) Yet, there was no

4    procedure, policy, or practice at DRT that would have prevented the Dacanays from filing such a

5    claim (though, if without merit or otherwise deficient, it could have been rejected). (*Id.* ¶ 5).

6        In response to the original complaint, the Government moved to dismiss based upon the

7    failure to exhaust and the statute of limitations. On September 9, 2005, the Court granted the

8    motion to dismiss, holding that the Dacanay's failure to exhaust and the statute of limitations

9    barred all of the Plaintiffs' claims. (*See* Docket No. 19 at 8-15). The Court held that Plaintiffs

10   either could exhaust their remedies or could file an amended complaint that sought to remedy the

11   deficiencies of the complaint. (*Id.* at 15). If Plaintiffs chose to amend, they were instructed to

12   either allege exhaustion, the applicability of a *statutory* exception to the exhaustion requirement,

13   or facts showing futility (although the Court did not rule that futility could necessarily apply).

14   (*Id.* at 13:3-7; *see also id.* at 12 n.9). The Court further held that the Plaintiffs were required to

15   plead the relevant dates regarding the statute of limitations and sufficient facts showing that the

16   claims were not barred by the statute of limitations. (*Id.* at 14-15; *see also id.* at 7 n.8).

17       On October 7, 2005, Plaintiffs filed an amended complaint. (Docket No. 24). The new

18   complaint did not allege exhaustion of remedies or statutory exception, but did seek to plead

19   futility. (*Id.* at ¶¶ 58-59). With regard to the statute of limitations, the amended complaint

20   alleged payment of the taxes outside of the statutory period (*see id.* at ¶ 60), but then went on to

21   allege that the statute of limitations was tolled or that the Government was estopped from

22   asserting the statute. (*Id.* ¶¶ 62-65).

23       The Government, through the Attorney General's office, filed an Answer on October 31,

24   2005. (Docket No. 26). Following the Attorney General's unilateral decision to attempt to

25   withdraw from this case, the Governor requested that his counsel be substituted in as counsel for

26

27

28       ² Declaration of Paul J. Pablo in Support of Motion for Judgment on the Pleadings or, in the Alternative, Summary Judgment, filed herewith ("Pablo Dec. ISO Motion for SJ").

1    the Government. (Docket No. 71). This request was granted on April 25, 2006. (Docket No.

2    75). The Government then, through its new counsel, filed a request for leave to file a dispositive

3    motion. On June 23, 2006, this Court issued an Order granting the Government's request (Docket

4    No. 93), and accordingly it now files this motion.

5                            **STATEMENT OF FACT**[3]

6         **A.    Assessment of the 1998 & 1999 Taxes**

7         On April 15, 1999, the Dacanays filed a joint tax return for tax year 1998 reporting that a

8    refund of $2,808.00 was owed to them. (Pablo Dec. ISO Opp. to Class Cert. ¶ 12 & Ex. B).

9    However, the return was selected for an audit. (*Id*. ¶ 13 & Ex. F). On June 3, 2002, the audit of

10   the Dacanays' 1998 tax year return (as amended) was completed as an "agreed case." (Pablo

11   Dec. ISO Opp. to Class Cert. at ¶ 16 & Ex. Q). This means that the Dacanays chose to execute a

12   Form 4549, waiving the right to contest an assessment of taxes and to further notice of the

13   assessment. (*Id*. ¶¶ 5, 15, 18 & Ex. Q). The agreed result of the audit was that the Dacanays

14   owed taxes for tax year 1998 of $5,715.00 and a penalty of $1,143.00 under 26 U.S.C. § 6662(d).

15   (*Id*. Ex. Q). The Dacanays' 1998 GTIT taxes due were assessed on August 8, 2002. (*Id*. Ex. T).

16        On April 14, 2000, the Dacanays had filed a joint tax return for 1999 reporting that they

17   owed the Government of Guam $1,795.00. (Pablo Dec. ISO Opp. to Class Cert. at ¶ 19 & Ex.

18   "G"). Accompanying that return was a letter from Ms. Dacanay asking that DRT offset the

19   Dacanays' 1999 tax liability with the tax refunds claimed for tax years 1997 and 1998. (*Id*. Ex.

20   H). However, this was not possible. The remaining amount owed to the Dacanays for tax year

21   1997 already had been refunded or offset against other liabilities. (*Id*. ¶ 20). And tax year 1998

22   had been selected for an audit. The result was that on June 28, 2000, DRT processed the

23   Dacanays' 1999 tax return and assessed the amount due. (Id. Ex. M). No further notice was

24   required because DRT was only assessing the amount Plaintiffs admitted was due. (*Id*. ¶¶19-21).

25

---

26   [3] This statement of fact is substantially identical to the statement contained in the
     Government's recently filed opposition to class certification. It is included here so as to present
27   the Court with the complete record relevant to this motion. To avoid any wholly redundant
     filings, the relevant facts are taken from Docket No. 81, which is the Declaration of Paul J. Pablo
28   submitted in support of that opposition brief ("Pablo Dec. ISO Opp. to Class Cert.").

## B. The Collections Process

DRT began collections proceedings as to tax year 1999 on July 21, 2000, when the Dacanays' tax year 1999 case was labeled delinquent and referred to the Collections Branch. A Second Notice was sent to the Dacanays accompanied by IRS Publication 1 (which advises taxpayers of many of their rights). (Pablo Dec. ISO Opp. to Class Cert. at ¶ 23, & Exs. M, S).

On October 2, 2000, DRT sent by certified mail a "Notice of Intent to Levy" for tax year 1999 accompanied by IRS Publication 594 and DRT Publication 1660. (Pablo Dec. ISO Opp. to Class Cert. at ¶ 25 & Exs. O, K, L). These publications contain numerous facts regarding the rights of taxpayers in collections proceedings. (*Id.*) DRT never enforced a levy for tax year 1999 (*i.e.*, the Dacanays' assets and wages were never levied). (*Id.* at ¶ 26).

On February 6, 2003, the Dacanays' tax year 1998 case also was labeled a delinquent account and referred to the Collections Branch. (Pablo Dec. ISO Opp. to Class Cert. at ¶ 28). Again, the Dacanays received a notice and Publication No. 1. (*Id.*).

On February 24, 2003, the Dacanays made voluntary payments of $10,238.15 for various taxes owed. (Pablo Dec. ISO Opp. to Class Cert. at ¶ 30). The "Field Receipts" for this payment indicate that of this amount, $4,677.57 was paid for Guam Gross Receipt Tax (using Form BRQ) owed by the Dacanays for the period from December 2001 to December 2002. The remainder of this amount, $5,560.58 was paid to the Dacanays' 1998 GTIT tax year liability based upon the Form 4549 "agreed" examination result. (*Id.* ¶¶ 30-32 & Ex. U).

On March 20, 2003, DRT sent to the Dacanays by certified mail a "Notice of Intent to Levy" for tax year 1998. (Pablo Dec. ISO Opp. to Class Cert. at ¶ 33 & Ex. V). Again, standard DRT procedure was that it was accompanied by IRS Publication 594 and DRT Publication 1660, publications containing numerous facts regarding the rights of taxpayers in collections proceedings. (*Id.* Exs. K, L). As with the levy for tax year 1999, DRT never enforced the levy for tax year 1998 (*i.e.*, the Dacanays' assets and wages were never levied). (*Id.* at ¶ 34).

On March 25, 2003, DRT recorded a Guam federal tax lien for tax years 1998 and 1999, and sent a copy to the Dacanays. (Pablo Dec. ISO Opp. to Class Cert. at ¶ 35 & Ex. W). The "Notices of Intent to Levy" (*Id.* Exs. O and V) had also provided prior notice to the Dacanays of

the intent to file the lien. (*Id.* at ¶ 35). Although at the time it appeared the Dacanays still owed DRT money, it was soon determined that there were available funds with which to offset the remaining balance for tax year 1998, as well as the entire balance for 1999 (which had yet to be paid at all). (*Id.* at ¶ 36). Back on June 8, 2000, DRT had approved an amnesty for the Dacanays' June 1998 to September 1999 BRQ's. This meant that (after further processing), the Dacanays would eventually receive a refund or offset of the BRQ's previously satisfied by an offset of the 1997 taxes. (*Id.* ¶¶ 9, 37). Moreover, on February 24, 2003, the Dacanays filed several years' worth of amended BRQ's. This created the possibility of further offsets. (*Id.* ¶ 38).

On April 4, 2003, Ms. Dacanay came into DRT and met with the Collections Officer assigned to the case. (Pablo Dec. ISO Opp. to Class Cert. at ¶ 39). She stated that the amended BRQ's that had been filed on February 24, 2003 would show an overpayment by the Dacanays sufficient to satisfy the remaining GTIT taxes owed for tax years 1998 and 1999. However, only the Business Privilege Tax Branch ("BPTB") of DRT (which is separate from the Examination and Collection Branches) can process amended BRQ's. (*Id.* ¶ 39 & Ex. Y). Thus, Mr. Guerrero referred Ms. Dacanay to the Supervisor of BPTB, Janice Benavente. Ms. Benavente called Mr. Guerrero, asking that he hold off on collection and release the lien because the amended BRQ's would be enough to offset the amounts owed. (*Id.*) That same day (April 4, 2003), DRT released the tax lien that had been put in place ten days earlier. (Pablo Dec. ISO Opp. to Class Cert. at ¶ 40 & Ex. X). No money was ever collected based on the lien. (*Id.* ¶ 40).

On December 21, 2005, the BRQ offset/original 1997 offset was processed and used to satisfy all remaining obligations for tax year 1998 and 1999, and a "Notice of Adjustment" was sent to the Dacanays. (Pablo Dec. ISO Opp. to Class Cert. at ¶ 41 & Ex. Z). With the offset made, the Dacanays' collection accounts for tax years 1997 and 1998 were closed. (*Id.*)

## ARGUMENT

The Government of Guam brings this motion for judgment on the pleadings under Fed. R. Civ. Proc. 12(c), and in the alternative for summary judgment under Fed. R. Civ. Proc. 56.

Fed. R. Civ. Proc. 12(c) provides that "[a]fter the pleadings are closed but within such

1    time as not to delay the trial, any party may move for judgment on the pleadings." "A motion for
2    judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c) is subject to the same standard as
3    a Rule 12(b)(6) motion to dismiss." *Constitution Bank v. DiMarco*, 815 F. Supp. 154, 157 (E.D.
4    Pa. 1993). On a motion to dismiss, all well-pleaded allegations in the Plaintiffs' complaint must
5    be taken as true and construed in the light most favorable to them. *Shwarz v. United States*, 234
6    F.3d 428, 435 (9th Cir. 2000). However, the Court does "not accept any unreasonable inferences
7    or assume the truth of legal conclusions cast in the form of factual allegations." *Ileto v. Glock*
8    *Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003) (citation omitted). Further, with regard to issues that go
9    directly to the Court's subject matter jurisdiction, the Court may consider extrinsic evidence.
10   *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citing *White v. Lee*,
11   227 F.3d 1214, 1242 (9th Cir. 2000)).

12          Fed. R. Civ. Proc. 56(c) "mandates the entry of summary judgment ... against a party who
13   fails to make a showing sufficient to establish the existence of an element essential to that party's
14   case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477
15   U.S. 317, 322 (1986). Accordingly, a defendant moving for summary judgment need only point
16   out to the Court that, on at least one such element, no evidence supports non-moving party's case.
17   *Id.* at 322-23. At that point, the plaintiff bears the burden of submitting admissible evidence that
18   "set[s] forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. Proc. 56(e);
19   *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, (1986) (same); *T.W. Elec. Serv. v.*
20   *Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) ("the nonmoving party may
21   not rely on the mere allegations in the pleadings in order to preclude summary judgment").

22          An issue is "genuine" only "if the evidence is such that a reasonable jury could return a
23   verdict for the nonmoving party"; a fact is "material" only if it "might affect the outcome of the
24   suit under the governing law." *Anderson*, 477 U.S. at 248-49. The plaintiff "must do more than
25   simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*
26   *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). At the very least, the plaintiffs must
27   produce some "significant probative evidence tending to support the complaint." *T.W. Elec. Serv*,
28

1   809 F.2d at 630. The Court is not required to search the record for evidence on which to deny

2   summary judgment. *See Forsberg v. Pacific N.W. Bell Tel. Co.,* 840 F.2d 1409, 1417-18 (9th Cir.

3   1988). A plaintiff cannot rely on legal memoranda and oral argument, which are not evidence

4   and do not create issues of fact capable of defeating an otherwise valid motion for summary

5   judgment. *See British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir. 1978).

6       Further, the Ninth Circuit has established that "[n]o longer can it be argued that any

7   disagreement about a material issue of fact precludes the use of summary judgment." *California*

8   *Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.

9   1987). Indeed, "if the factual context makes the non-moving party's claim *implausible,* that party

10  must come forward with more persuasive evidence than would otherwise be necessary to show

11  that there is a genuine issue for trial." *Franciscan Ceramics,* 818 F.2d at 1468 (emphasis in

12  original) (citing *Matsushita,* 475 U.S. at 587).

13  **I.    PLAINTIFFS FAILED EXHAUST ADMINISTRATIVE REMEDIES**

14      As this Court has already recognized, in tax refund cases, the plaintiff must prove

15  exhaustion. (*See* Docket No. 19 (September 9, 2005 Order re Motion to Dismiss) at 8-12.)

16  Exhaustion is a jurisdictional requirement that cannot be waived. (*Id.* at 11-12).[4]

17      In granting the prior motion to dismiss, this Court held that Plaintiffs could seek to amend

18  to satisfy the exhaustion requirement in one of three ways: "By alleging facts demonstrating that

19  [(1)] they have exhausted their administrative remedies in compliance with the IRS code, [(2)]

20  they are statutorily exempted from complying with the applicable provisions of the IRS code, or

21

---

22      [4] This prior ruling is on firm legal ground. The Ninth Circuit has repeatedly recognized
    that a plaintiff's failure to exhaust a tax refund claim requires dismissal for lack of subject matter
23  jurisdiction. *Quarty v. United States,* 170 F.3d 961, 972 (9th Cir. 1999); *Boyd v. United States,*
    762 F.2d 1369, 1372 (9th Cir. 1985); accord *Martinez v. United States,* 595 F.2d 1147, 1148 (9th
24  Cir. 1979) (per curiam)); *Bear Valley Mutual Water Co. v. Riddell,* 493 F.2d 948, 951 (9th Cir.
    1974). The reason for this rule is that the right to sue for a tax refund is a limited waiver of
25  sovereign immunity, and that waiver that must be "strictly construed, in terms of its scope, in
    favor of the sovereign." *Quarty,* 170 F.3d at 972 (quoting *Lane v. Pena,* 518 U.S. 187, 192
26  (U.S.D.C., 1996). This same strict construction of the exhaustion requirement must be applied to
    the Territory of Guam because it, like the United States, enjoys sovereign immunity absent a
27  waiver. *Marx v. Govt. of Guam,* 866 F.2d 294, 298 (9th Cir. 1989) ("controlling authority and the
    legislative history of the Organic Act compel our holding that the government of Guam has
28  inherent sovereign immunity").

1   [(3)] they are excused from compliance due to the futility of pursuing administrative remedies."

2   (Docket No. 19 at 13:2-7). In so ruling, the Court did not actually rule as to whether there was an

3   exception if exhaustion would have been futile, noting only that in the case of *Simpao v. Govt. of*

4   *Guam*, Guam Dist. Ct. CV04-00049 (March 17, 2005 Order) such an argument was permitted

5   where the Government allegedly blocked out the space on a tax form for claiming the earned

6   income tax credit thereby preventing the filing of such a claim. (*Id.* at 12 n.9).

7          Here, Plaintiffs' amended complaint seeks solely to proceed on the theory that they are

8   excused from compliance with the requirement of exhaustion because exhaustion would have

9   been futile. (Docket No. 24 at ¶ 58-59). It contains no allegations that Plaintiffs exhausted their

10  claims or were statutorily exempted from exhaustion. (*See* Docket No. 24). Indeed, the

11  undisputed facts show that Plaintiffs never exhausted their claims. (*See* Pablo Dec. ISO Motion

12  for SJ ¶ 4).

13         To begin with, futility is not an available exception. As the Ninth Circuit has reaffirmed,

14  the U.S. Supreme Court has long recognized that the exhaustion requirement in tax refund cases

15  must apply, even if exhaustion would have been futile:

16             **An anticipated rejection of the claim, which the statute contemplates, is not a**
               **ground for suspending its operation.** Even though formal, the condition upon
17             which the consent to suit is given is defined by the words of the statute, and 'they
               mark the conditions of the claimant's right.' *Rock Island R.R. Co. v. United*
18             *States*, 254 U.S. 141, 143 [(1920)]. Compliance may be dispensed with by waiver,
               as an administrative act, *Tucker v. Alexander, supra* [275 U.S. 228 (1927)]; but it
19             is not within the judicial province to read out of the statute the requirement of its
               words, *Rand v. United States*, 249 U.S. 503, 510 [(1918)].
20
    *Quarty*, 170 F.3d at 973 (emphasis added).
21
           Assuming *arguendo* the correctness of the *Simpao* holding, it is inapplicable here. As
22
    stated, in *Simpao* the allegation was that the Government wholly prevented the actual
23
    administrative filing of an earned income tax credit claim by blacking out the relevant portion of
24
    the tax form. (*See* Docket 19 at 12 n.9 (citing *Simpao v. Govt. of Guam*, Guam Dist. Ct. CV04-
25
    00049 (March 17, 2005 Order) at 7-8). In other words, *Simpao* seemed to be carving a narrow
26
    exception where the assertion was that a claim *could not be filed at all*—not that a claim would be
27
    rejected if filed. This is consistent with the holding of *Quarty*, emphasized above, that the
28

1    anticipated rejection of a claim cannot suspend the operation of the exhaustion requirement.

2    *Quarty*, 170 F.3d at 973.

3         Here, in contrast, Plaintiffs are not alleging that they were affirmatively prevented from

4    filing a claim. Rather, Plaintiffs allege lack of notice of their rights and allege that filing a claim

5    would have been "futile" as the Government of Guam allegedly did not implement procedures

6    permitting such a claim to be granted:

7         58. Because plaintiffs Henry S. and Laura Lynn Dacanay, and other taxpayers
          similarly situated, never received the required and conforming Final Notice/Notice

8         of Intent to Levy, they had no idea that they had additional rights which could
          have been exercised, and had no reason to know that they had been deprived of

9         these important protections and had paid taxes under illegal collection procedures.

10        59. Because the Government of Guam had intentionally, secretively and
          systematically deprived taxpayers of their rights under the Internal Revenue Code,

11        it would have been futile for plaintiffs or taxpayers similarly situated to apply or
          file for a tax refund, as the Government of Guam had never implemented

12        regulations or procedures that would have allowed the agency to correct itself
          upon subsequent administrative review.

13   (Docket 24 at ¶¶ 58, 59).

14        These allegations are not the same as *Simpao*. There is no allegation being made that a

15   claim could not be filed; rather, the allegation is that it would have been rejected. (*See* Docket

16   No. 24 at ¶ 59). Indeed, Plaintiffs could not allege that there was no possibility of filing a claim

17   at all. There was *no* procedure, policy, or practice at DRT that would have prevented the

18   Dacanays from *filing* a refund claim based upon the asserted inadequacies of the notices of

19   deficiencies, intent to leys, and liens (though, if without merit or otherwise deficient, it could have

20   been rejected). (Pablo Dec. ISO Motion for SJ at ¶ 5)

21        In fact, the Government of Guam is aware of only one court to squarely address the issue

22   of whether administrative remedies are unavailable or otherwise inadequate when the taxpayer

23   has not received a notice of their right to a hearing, in alleged violation of 26 U.S.C. §§ 6320 and

24   6330. That Court flatly rejected the argument. In *Turner-Simmons v. U.S.*, 2005 WL 1155222 *2

25   (N.D. Ga., March 21, 2005), the court held: "There is nothing in this regulation which indicates

26   that it would not apply to a claim that the IRS violated 26 U.S.C. §§ 6320 or 6330. The plaintiffs,

27   moreover, have not brought to the court's attention any facts or cases indicating that the IRS's

28

1  administrative claims procedure is inadequate. Thus, the court finds that there was an
2  administrative remedy available to the plaintiffs and that the remedy was adequate." *Id*. As a
3  result, the Court dismissed the complaint for lack of jurisdiction. *Id*. The same result should
4  apply here.[5]

5  **II.     THE STATUTE OF LIMITATIONS BARS PLAINTIFFS' CLAIMS**

6         **A.     The Complaint Is Untimely**

7         As this Court previously held, a tax refund claim must be brought within three years of the
8  filing of a return or two years of the payment of taxes, whichever is later. (Docket 19 at 14:9-14
9  (quoting 26 U.S.C. § 6511)). "This limitations period is jurisdictional and cannot be waived."
10  (*Id*. at 14:7-8 (quoting *Gabelman v. Commissioner*, 86 F.3d 609, 611 (6th Cir. 1996))); *accord*
11  *UOP v. United States*, 99 F.3d 344, 347 (9th Cir. 1996).

12         Plaintiffs filed their original complaint on June 8, 2005. Neither Plaintiffs' original nor
13  amended complaint alleges that Plaintiffs filed their 1998 or 1999 tax return within the three years
14  prior to bringing this lawsuit. (*See* Docket Nos. 1, 24). And, indeed, the undisputed facts show
15  that they filed their 1998 and 1999 returns on April 15, 1999 and April 14, 2000, respectively.
16  (Pablo Dec. ISO Opp. to Class Cert. ¶¶ 12, 19 & Exs. B, G). Accordingly, the complaint was not
17  brought within three years of the filing of their tax returns.

18         As the Court stated in dismissing the original complaint on the ground of the statute of
19  limitations, Plaintiffs' original complaint also was silent as to when they alleged they paid their
20  taxes. (Docket No. 19 at 7 n.8; *id*. at 14:17-19). However, Plaintiffs' amended complaint alleges

21

22

   _____

23         [5] As this Court previously recognized (Docket No. 19 at 9:18-26), Plaintiffs cannot cure
24  their failure to exhaust by filing the administrative claim and amending to allege exhaustion. "No
   suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or
25  other sum, shall be begun before the expiration of 6 months from the date of filing the claim
   required under such section unless the [Governor or delegate] renders a decision thereon within
26  that time...." 26 U.S.C. § 6532(a)(1) (terms substituted pursuant to mirror-image rule and
   emphasis added). In other words, before bringing suit for a refund, the Dacanays had to file an
27  administrative claim and wait six months (or until that claim is denied) before filing suit. Until
   then, the Court lacks jurisdiction over their suit and their complaint must be dismissed for lack of
28  subject matter jurisdiction. *Boyd*, 762 F.2d at 1371 ("If the refund claim does not meet the
   requirements of the Code and the regulations, the suit must be dismissed....") (citations omitted).

1    that they paid their 1998 and 1999 taxes on February 24, 2003.[6]   (Docket 24 at ¶ 60).

2    Accordingly, the statute of limitations expired no later than February 24, 2005 based on

3    Plaintiffs' allegations, and this action brought on June 8, 2005 is untimely.

4         **B.    Tolling or Estoppel Are Not Available as a Matter of Law**

5         In their amended complaint, Plaintiffs seek to establish that the statute of limitations was

6    tolled, or that the Government is estopped from asserting the statute. (Docket No. 24 at ¶¶ 62-

7    65).   However, judicially created equitable exceptions to the statute of limitations that might

8    apply in other types of cases do not apply in tax refund cases. In *United States v. Brockamp*, 519

9    U.S. 347 (1997), the Supreme Court unanimously held that the time limitation on tax refund

10   claims is not subject to equitable tolling. *Id.* at 348. As the Court explained:

11       The nature and potential magnitude of the administrative problem suggest that
         Congress decided to pay the price of occasional unfairness in individual cases
12       (penalizing a taxpayer whose claim is unavoidably delayed) in order to maintain a
         more workable tax enforcement system.  At the least it tells us that Congress
13       would likely have wanted to decide explicitly whether, or just where and when, to
         expand the statute's limitations periods, rather than delegate to the courts a
14       generalized power to do so wherever a court concludes that equity so requires.

15   *Id.* at 352-53.

16       This same rule since has been consistently applied to bar claims of equitable estoppel,

17   including by the district courts of the Ninth Circuit. *E.g. Danoff v. United State*s, 324 F. Supp. 2d

18   1086, 1099 (C.D. Cal. 2004) ("In cases decided subsequent to *Brockamp*, the courts uniformly

19   have held that equitable principles, including the doctrine of equitable estoppel, *cannot* toll

20   statutes of limitation in tax refund suits.") (italics in original) (citing, *inter alia*, *RHI Holdings,*

21   *Inc. v. United States*, 142 F.3d 1459 (Fed. Cir. 1998); *Thomasson v. United States*, 1997 WL

22   220321, *4 (N.D. Cal. April 21, 1997); *Brummett v. United States*, 218 F. Supp. 2d 1253, 1259

23   (D. Or. 2002)). For this reason alone, tolling or estoppel theories are unavailing.

24        **C.    Plaintiffs Were Advised of Their Rights and at least on Inquiry Notice**

25        Plaintiffs' tolling or estoppel theory also fails because it is contrary to the undisputed facts

26   in this case. In their amended complaint, Plaintiffs allege that the Government of Guam is

27   _____

28        [6] This allegation also is inaccurate. (Pablo Dec. ISO Opp. to Class Cert. ¶ 30).

*CIVIL CASE NO. 05-00017*                              12
{G0013395.DOC;1}

1    estopped from asserting that the statute of limitations has run "[b]ecause the Government of
2    Guam failed to give the statutorily required notices of appeal" and thus Plaintiffs' "were never
3    advised of their right to appeal." (Docket No. 24 at ¶ 62).

4            To begin with, at most Plaintiffs are alleging that the Government failed to give proper
5    notice. However, estoppel against the government requires (among other things) a showing of
6    affirmative misconduct. *Morgan v. Heckler*, 779 F.2d 544, 545 (9th Cir.1985) ("estoppel against
7    the government must rest on affirmative misconduct going beyond mere negligence"); *accord*
8    *Mukherjee v. I.N.S.*, 793 F.2d 1006, 1008-09 (9th Cir. 1986). The Ninth Circuit has held *en banc*
9    that the failure to inform an individual of his or her legal rights is not affirmative misconduct. *See*
10   *Santiago v. INS*, 526 F.2d 488, 493 (9th Cir. 1975) (en banc) (holding that immigration officers
11   did not engage in affirmative misconduct where they admitted otherwise excludable aliens, failed
12   to inform the aliens of the conditions of their visa, and failed to inquire about the circumstances
13   of their entry); *Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1184 (9th Cir. 2001) (en banc) ("We
14   have previously defined 'affirmative misconduct' to mean a 'deliberate lie' or 'a pattern of false
15   promises.' . . . Negligently providing misinformation to an alien does not meet this definition, so
16   Socop cannot prevail on an estoppel theory.") (citations omitted).[7]

17           Next, there was no failure to advise Plaintiffs' of their appeal rights and related rights. In
18   July 2000 and again in February 2003, Plaintiffs received notice of their right to contact a
19   Taxpayer Advocate (although not a local Guam advocate). (Pablo Dec. ISO Opp. to Class Cert.
20   at ¶¶ 23, 28 & Ex. S). In addition, Plaintiffs received notice about available appeals processes in
21   response with respect to liens and levies in October 2000 and again in March 2003. (Pablo Dec.
22   ISO Opp. to Class Cert. ¶¶ 25, 33 & Exs. K, L). This is despite the fact that Plaintiffs waived

23   _____

24           [7] Plaintiffs' only other effort to establish affirmative misconduct is to cite the *Koster* case
     where the Government of Guam did not recognize a business loss exception and two other cases
25   involving the Government's non-payment of the earned income tax credit (a matter that the
     Government has actually settled, pending Court approval). (Docket 24 at ¶¶ 56, 64). This is an
26   absurd argument. It is the equivalent of arguing that because the United States is found liable in
     numerous tax refund cases each year, it is subject to a blanket claim of estoppel for affirmative
27   misconduct in *any* tax litigation case. Tax authorities sometimes interpret or apply the tax code in
     a manner later deemed incorrect. But that does not open the door to throwing out all
28   requirements of a tax refund lawsuit under a blanket "estoppel" claim.

1  their rights to appeal the assessment underlying any lien or levy. (Pablo Dec. ISO Opp. to Class

2  Cert. Ex. Q (declaring they did "not wish to exercise my appeal rights with the Department of

3  Revenue and Taxation or to contest in the District Court of Guam the findings in this report")).

4  Accordingly, the Government cannot be estopped from asserting the statute of limitations against

5  Plaintiffs, who had notice of their rights before they ever paid their taxes.

6       Moreover, the Court need not even conclude that such notices were complete in order to

7  conclude that the statute of limitations has run as a matter of law. It is well established that, even

8  in the face of a fraudulent misrepresentation (and none is alleged here), the statute of limitations

9  starts so long as a person knows sufficient facts that a reasonable person would be on inquiry

10  notice. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).

11       At the very minimum, the above-described notices placed Plaintiffs on inquiry notice as to

12  the question of whether they had been fully advised of their rights, and a reasonably diligent

13  person would be expected upon receipt of such notices to make an inquiry as to what rights they

14  had. For example, receipt of a notice referencing the existence of a local taxpayer advocate under

15  the federal system (*see* Pablo Dec. ISO Opp. to Class Cert. Ex. S) at minimum put Plaintiffs on

16  inquiry notice as why there was no local tax advocate and as to the possibility of filing a claim on

17  that basis. Similarly, even if they were inadequate (which they were not), receipt of the notices

18  regarding the various administrative appeals rights (*see* Pablo Dec. ISO Opp. to Class Cert. Exs.

19  K & L) at least put Plaintiffs on inquiry notice to investigate their full rights regarding appeals

20  (which are stated in the publicly available Internal Revenue Code). *See also Lavin v. Marsh*, 644

21  F.2d 1378, 1383 (9th Cir. 1981) (in regard to a claim of estoppel against the government, holding

22  that "[p]ersons dealing with the government are charged with knowing government statutes and

23  regulations, and they assume the risk that government agents may exceed their authority and

24  provide misinformation.") Accordingly, tolling or estoppel is unavailing.

25  **III.    PLAINTIFFS CANNOT ESTABLISH VALID CLAIMS ON THE MERITS**

26       As stated, Plaintiffs claim that for tax years 1998 and 1999 they did not receive or

27  received inadequate (1) notice of deficiencies, (2) notice of liens; and (3) notice of intent to

28

1  levies. As will be shown, Plaintiffs cannot prevail on any of these three claims.

2  **A.  Plaintiffs Were Not Entitled to "Notices of Deficiency" as a Matter of Law**

3  Plaintiffs' amended complaint alleges that they are due tax refunds because the

4  Government failed to issue them valid "Notices of Deficiency" before collecting income taxes

5  from them for tax years 1998 and 1999. (Docket No. 24 at ¶¶ 1, 2). However, Plaintiffs were not

6  entitled to such notices as a matter of law and, accordingly, no refund can be due.

7  **1.  Plaintiffs Waived Their Right to a Notice of Deficiency as to Tax Year
   1998 pursuant to 26 U.S.C. § 6213(a)**

8
   The requirement of a notice of deficiency is created by 26 U.S.C. § 6213(a). However,
9
   section 6213, in subpart (d), goes on to state that taxpayers "at any time (whether or not a notice
10
   of deficiency has been issued) have the right . . . to waive the restrictions provided in [§ 6213]
11
   subsection (a) on the assessment and collection of the whole or any part of the deficiency." 26
12
   U.S.C. § 6213(d). In other words, the right to a "Notice of Deficiency" can be waived.
13
   Plaintiffs' claim for tax year 1998 falls under this waiver provision. With respect to the
14
   1998 tax year, the Dacanays' tax return was audited and they were found to have underpaid their
15
   taxes by $5,715.00 and were assessed a penalty of $1,143.00. (Pablo Dec. ISO Opp. to Class
16
   Cert. ¶¶ 13-16 & Ex. Q). At the close of the audit, the Dacanays agreed that this was the amount
17
   due and executed a Form 4549 ("Income Tax Examination Changes") on June 3, 2002. (*Id.* at Ex.
18
   Q). Under the express terms of that Form, the Dacanays were declaring that they did "not wish to
19
   exercise [their] appeal rights with the Department of Revenue and Taxation or to contest in the
20
   District Court of Guam the findings in this report." (*Id.*) The Dacanays further gave their
21
   "consent to the immediate assessment and collection of any increase in tax and penalties . . .
22
   shown above, plus any interest as provided by law." (*Id.*)
23
   It is established law in the Ninth Circuit (and elsewhere) that execution of a Form 4549
24
   and agreement to the immediate assessment and collection of liabilities waives the right to receive
25
   a "Notice of Deficiency" under § 6213(a). *Monge v. Smyth*, 229 F.2d 361, 367-68 (9th Cir. 1956)
26
   (where taxpayer executed "agreement as to the deficiency," he "obviated the need of sending the
27
   formal deficiency notice" pursuant to § 6213(d)); *see also United States v. Spence*, 110 F. Supp.
28

1   2d 1335, 1344 (D. N.M. 1999), *rev'd on other grounds* 242 F. 3d 392 (10th Cir. 2000) (taxpayers

2   were not entitled to statutory notices of deficiency because "they waived that right when they

3   signed Internal Revenue Service Form 4549-A"); *In re Joyce Barry*, 48 BR 600, 603 (Bankr.

4   M.D. Tenn. 1985) (execution of Form 4549 waived taxpayer's right to notice of deficiency, even

5   where there was a computational error as to the amount assessed); *United States v. Gilbert*, 1991

6   WL 195585 * 2, 91-2 USTC ¶ 50400 (D. Ariz. 1991) (signed Statement of Income Examination

7   Changes "establishes ... waiver of Section 6213 notification"). Accordingly, Plaintiffs have no

8   claim regarding their non-receipt of a "Notice of Deficiency" for tax year 1998.

9                    **2.      Plaintiffs Were Not Entitled to a Notice of Deficiency for Tax Year**
                              **1999 as a Matter of Law**
10

11          Plaintiffs also lack a potential "Notice of Deficiency" claim for tax year 1999. Here, the

12  undisputed facts show that, with respect to Plaintiffs' 1999 taxes, the Government of Guam

13  merely sought to collect on Plaintiffs' tax liability, as reflected by their own tax return. (Pablo

14  Dec. ISO Opp. to Class Cert. ¶ 19, Ex. G). Where the government "is attempting to collect only

15  the amount shown on the return (plus penalties and interest), there is no deficiency and the

16  [taxpayers] are not entitled to a 90-day letter." *Knoefler v. Schneider*, 565 F. 2d 1072, 1074 (9th

17  Cir. 1977) (reasoning that "[n]inety-day letters, or notices of deficiency, are sent when the

18  Commissioner determines that more tax is owed than is shown on the return"); *see also Lyddon &*

19  *Co. (America) Inc. v. United States*, 158 F. Supp. 951, 953 (Ct. Cl. 1958) ("When one files a tax

20  return showing taxes due, he has, presumably, assessed himself and is content to become liable

21  for the tax.... The Commissioner has no occasion to determine a deficiency and give the taxpayer

22  notice of it, since at that stage, . . . the taxpayer's own computation of his taxes may be taken as

23  correct."). Plaintiffs have no claim regarding non-receipt of a notice of deficiency for 1999.

24                   **3.      The Tax Year 1999 Claim Also Fails Because It Was Wholly Satisfied**
                              **By Administrative Offset, Which Does Not Require Notice**

25          Moreover, Plaintiffs also were not entitled to any "Notice of Deficiency" for tax year 1999

26  because they never actually made a separate payment of this liability. Instead, the Government

27  offset their liability for the 1999 tax year with refunds for other years. (Pablo Dec. ISO Opp. to

28

1  Class Cert. ¶41, Ex. Z). 26 U.S.C. § 6402(a) expressly provides that, "[i]n the case of any

2  overpayment, the Secretary [of the Treasury], within the applicable period of limitations, may

3  credit the amount of such overpayment, including any interest allowed thereon, *against any*

4  *liability* in respect of an internal revenue tax on the part of the person who made the

5  overpayment." (Emphasis added). *Fulgoni v. United States*, 23 Cl. Ct. 119, 126 (1991) ("The

6  IRS has express statutory authority to collect unpaid tax by administrative offset."). No authority

7  requires a notice of deficiency (or any other notice) for "a simple bookkeeping operation of

8  applying a credit for [one year] against a debt for [another]." *Id.* at 126 ("There is no express

9  statutory requirement that the IRS make notice and demand for payment upon the taxpayer before

10  collecting unpaid tax by administrative offset," nor does "fairness" require it).

11  **B.  Plaintiffs Have No Claim Regarding the Notice of Levy**

12  **1.  The Only Available Remedy for a Defective Notice of Levy Is the Return of the Levied Property—Not a Tax Refund Action**

13  The first defect in Plaintiffs' claim regarding the notice of intent to levy is that an invalid

14  notice of levy neither invalidates the underlying assessment nor forms the basis for a tax refund

15  claim. Unlike a notice of deficiency, a notice of intent to levy is not part of the assessment of

16  taxes. Instead, a notice of intent to levy, and a levy itself, occurs after taxes are assessed. *See* 26

17  U.S.C. § 6331. Thus, the IRC provides that property levied without valid notice *may* be returned

18  to the taxpayer, *if* the taxpayer has first filed a request for the return of the property within nine

19  months from the date of levy. 26 U.S.C. § 6343(b) ("If the Secretary determines that property has

20  been wrongfully levied upon, it shall be lawful for the Secretary to return – (1) the specific

21  property levied upon" "at any time." Also, "the amount of money levied . . . may be returned at

22  any time before the expiration of 9 months from the date of such levy."). Nothing about an

23  invalid notice of intent to levy supports a tax refund claim, as it has had no affect upon the

24  underlying assessment of the taxes.

25  **2.  The Government Never Levied Against the Dacanays**

26  Plaintiffs' claim regarding the notice of levy also fails because Plaintiffs were never

27  subject to the execution of a Government levy. (Pablo Dec. ISO Opp. to Class Cert. ¶ 42 e). As a

28

1    result, Plaintiffs were never entitled to receive notices of intent to levy. 26 U.S.C. § 6330(a)

2    (requiring notice "not less than 30 days" before the day of the first levy "made on any property or

3    right to property of any person"). Plaintiffs also experienced no injury because Plaintiffs paid no

4    taxes *pursuant* to a notice of levy. To the contrary, the only voluntary payments made were prior

5    to any notice of intent to levy issuing for the relevant tax year. (Pablo Dec. ISO Opp. to Class

6    Cert. ¶ 42 c, d). The subsequent administrative offsets that were used to satisfy Plaintiffs'

7    remaining tax liability required no notice. *See* 26 U.S.C. § 6330(a) (notice of intent to levy only

8    required *pre-levy*); *cf. Fulgoni*, 23 Cl. Ct. at 126 (offsets do not require notice).

9                    **3.    The Dacanays Received Proper Notices of Intent to Levy**

10          Plaintiffs received notices of intent to levy that complied with 26 U.S.C. § 6330. As

11   Plaintiffs admit, the Government sent them a Final Notice/Notice of Intent to Levy on or about

12   October 2, 2000 for the 1999 tax year. (Amended Complaint ¶ 57; Pablo Dec. ISO Opp. to Class

13   Cert. ¶ 25). They were sent another Notice/Notice of Intent to Levy on or about March 20, 2003,

14   for the 1998 tax year. (Pablo Dec. ISO Opp. to Class Cert. ¶ 33 & Exs. V, K, L). Plaintiffs claim

15   – without any evidence – that the notices did not comply with the requirements of § 6330(a)(3).

16   The Amended Complaint fails to put forth any specific factual allegations explaining how or why

17   their notices were deficient. That is because the notices did in fact "include in simple and

18   nontechnical terms" all of the requirements of § 6330(a)(3).

19          Each notice was comprised of a letter, and several enclosures including: (1) a form

20   "Request for a Collection Due Process Hearing" and related instructions; (2) IRS Publication 594,

21   "What You Should Know About The IRS Collection Process," which includes a section called

22   "Levies"; and (3) DRT Publication 1660, "Collection Appeal Rights for Liens, Levies, Seizures

23   & Installment Agreements." (Pablo Dec. ISO Opp. to Class Cert. ¶¶ 25, 33 & Exs. O, V). Each

24   letter stated it was being sent as notice of Plaintiffs' "right to receive Appeals consideration under

25   I.R.C. Section 6330." (*Id.*) Each letter set forth "the amount of unpaid tax," as required by §

26   6330(a)(3)(A). (*Id.*) The papers clearly set forth, as required by § 6330(a)(3)(B), "the right of the

27   person to request a hearing during the 30-day period . . ." (*See id.* Ex. K at 9 ("[Y]ou may file an

28

appeal with the IRS Office of Appeals. You must file your appeal within 30 days of the date of the Final Notice of Intent to Levy and a Notice of Right to Hearing.").[8]

Each notice also included information required by § 6330(a)(3)(C):

• "the provisions of this title relating to levy and sale of property[,]" and "the procedures applicable to the levy and sale of property under this title[,]" as required by subsections (i) and (ii); (*see* Pablo Dec. ISO Opp. to Class Cert. at Ex. K [IRS Publication 594] at 8-10 (entitled "Levies");

• "the administrative appeals available to the taxpayer with respect to such levy and sale and the procedures relating to such appeals[,]" as required by subsection (iii); (*see id.* at 4 ("Appeal Process" section) and 9);

• "the alternatives available to taxpayers which could prevent levy on property (including installment agreements under section 6159)[,]" as required by subsection (iv); (*see id.* at 6 (including information on installment agreements and offers in compromise)); *and*

• "the provisions of this title and procedures relating to redemption of property and release of liens on property[,]" as required by subsection (iv); (*see id.* at 9-10 (sections entitled "Releasing a levy," "Releasing your property," "Returning levied property," "Selling your property," and "Redeeming your real estate").

The Final Notices/Notices of Intent to Levy received by Plaintiffs complied with § 6330(a)(3).

C.  **Plaintiffs Have No Claim Regarding the Notice of Lien**

   1.  **The Remedy for a Defectively Recorded Lien or Notice of Lien Is Cancellation of the Recording and Notice—Not a Tax Refund**

There is no law establishing a right to a tax refund based upon an allegedly defective notice of lien. The only remedy for a defective notice or recordation for a lien is cancellation of the recordation and notice of lien: "The Secretary *may* withdraw a notice of a lien filed under this section and this chapter shall be applied as if the withdrawn notice had not been filed, if the Secretary determines that— **(A)** the filing of such notice was premature or otherwise not in accordance with administrative procedures . . . ." 26 U.S.C. § 6323(j)(1). This is because the lien itself is automatic and created upon the moment of assessment of unpaid taxes. *IRS v. McDermott*, 507 U.S. 447, 448 (1993) ("Upon th[e] assessment, the law create[s] a lien in favor of the United States on all real and personal property belonging to the [taxpayers], 26 U.S.C. §§ 6321 and 6322, including after-acquired property."). Accordingly, the lien itself is not

---

[8] Plaintiffs also had already been sent IRS Publication 1, "Your Rights as a Taxpayer." (Pablo Dec. ISO Opp. to Class Cert. ¶ 23 & Ex. S).

1   invalidated by a defective notice, since liens arise automatically upon a valid assessment of the

2   taxpayer's tax liability. *See* 26 U.S.C. §§ 6321, 6322. And, because the lien itself is automatic,

3   there is simply nothing about a defective notice of lien that gives rise to a tax refund claim.

4           **2.    Plaintiffs Never Paid Any Taxes Pursuant to Any Recorded Lien, and So Have No Claim Regarding the Notice of Lien Issue**

5          Even assuming *arguendo* that a defective notice of lien gives rise to a refund claim, the

6   undisputed facts demonstrate that the Government never collected any taxes from Plaintiffs

7   pursuant to a lien for tax years 1998 or 1999. (Pablo Dec. ISO Opp. to Class Cert. ¶ 39). The

8   only lien ever recorded was against Plaintiffs on March 25, 2003; however, the Government

9   withdrew the lien ten days later on April 4, 2003. (*Id.* ¶¶ 35, 39, 40 & Exs. X, Y). Plaintiffs

10  cannot show that they suffered *any* injury because they made no payments during the time the

11  lien was in force. (*Id.* ¶ 40). Indeed, the purpose of the notice of lien is simply to advise the

12  taxpayer of his right to a hearing and administrative appeals. 26 U.S.C. §§ 6320(a)(3), (b). Here,

13  Plaintiffs had already *agreed* to the amount of unpaid taxes assessed, and waived their rights to

14  "exercise [their] appeal rights with the Department of Revenue and Taxation or to contest in the

    District Court of Guam the findings in this report." (Pablo Dec. ISO Opp. to Class Cert. at ¶ 16,

15  Ex. Q). And, they received notice of their rights in collection cases. (*See id.* ¶¶ 25, 33 & Exs. O,

16  K, L). So it is unclear how, exactly, Plaintiffs were even affected, much less injured or entitled to

17  a refund, by the supposedly inadequate notice of lien.

18                                          **CONCLUSION**

19         For the forgoing reasons, the Government of Guam respectfully asks that the Court grant

20  it motion for judgment on the pleadings and/or summary judgment.

21         Dated this 30ᵗʰ day of June, 2006.

22                                     OFFICE OF THE GOVERNOR OF GUAM

23                                     CALVO & CLARK, LLP

                                       Attorneys at Law

24                                     Attorneys for *the Government of Guam*

25

26                   By: _____

27                              DANIEL M. BENJAMIN

28

*CIVIL CASE NO. 05-00017*
{60013395.DOC;}
Case 1:05-cv-00017    Document 98    Filed 06/30/2006    Page 24 of 24