Michael L. Kelly, Esq. - State Bar No. 82063
Robert M. Churella, Esq. - State Bar No. 73319
KIRTLAND & PACKARD LLP
2361 Rosecrans Ave.
4th Floor
El Segundo, CA 90245

Steven Zamsky, Esq.
ZAMSKY LAW FIRM
PMB 231
275-G Farenholt Avenue
Tamuning, Guam 96913
Telephone: (671) 686-3054
Facsimile: (671) 649-5829

Attorney for Plaintiffs Henry S. Dacanay
and Laura Lynn Dacanay
and all others similarly situated

FILED
DISTRICT COURT OF GUAM
JUN 3 0 2006
MARY L.M. MORAN
CLERK OF COURT

# UNITED STATES DISTRICT COURT

## TERRITORY OF GUAM

| | |
|---|---|
| HENRY S. DACANAY and LAURA LYNN DACANAY, <br><br> Plaintiffs, <br><br> v. <br><br> GOVERNMENT OF GUAM, <br><br> Defendant. | Case No. CV 05-00017 <br><br> **PLAINTIFFS' REPLY TO THE GOVERNMENT OF GUAM'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL** |

02078-00001 108399.1

**ORIGINAL**

## TABLE OF CONTENTS

| | | PAGE(S) |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | NUMEROSITY, COMMONALITY, AND TYPICALITY ARE CLEARLY PRESENT IN THE DEFINED CLASS | 5 |
| | A. The Allegations of Plaintiffs' Complaint Must Be Assumed True for the Purposes of Class Certification | 5 |
| | B. Numerosity Is Clearly Present | 6 |
| | C. Commonality Is Clearly Present | 6 |
| | D. Plaintiffs' Claims Are Typical of the Class | 7 |
| | (1) Plaintiffs And Class Members Were Injured by a Denial of Due Process | 7 |
| | 2) Plaintiffs' Alleged Agreement to the *Amount* of Taxes Assessed Does Not Waive Their Right to Other Due Process Protections. | 8 |
| | (3) Plaintiffs Did Not Receive Proper Notices of Intent to Levy | 9 |
| III. | DEFENDANT'S AFFIRMATIVE DEFENSES ARE NOT A BAR TO CLASS CERTIFICATION | 9 |
| | A. Alleged Failure to Exhaust Administrative Remedies | 10 |
| | B. Alleged Bar of the Statute of Limitations | 13 |
| IV. | CERTIFICATION OF ALL CLAIMS UNDER 23(b)(1), 23(b)(2), AND 23(b)(3) IS APPROPRIATE | 14 |

02078-00001 108399.1

# TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Abels v. JBC Legal Group, P.C.*, 227 F.R.D. 541 (9th Cir. 2005) .................. 1

*Amchem Products Inc. v. Windsor*, 521 U.S. 591, 594 (1997) .................. 16

*Appoloni v. U.S.*, 218 F.R.D. 556, 562 (W.D. Mich. 2003) .................. 6

*Bowen v. City of New York*, 476 U.S. 467 (1986) .................. 11-13

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974) .................. 5

*General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147 (1982) .................. 7

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .................. 7

*Marangi v. Government of Guam*, 319 F.Supp.2d 1179
   (D. Guam 2004) .................. 1

*Miller v. Mackey Intern., Inc.*, 452 F.2d 424 (5th Cir. 1971) .................. 5

*Molski v. Geich*, 318 F.3d 937 (9th Cir. 2003) .................. 15

*Mrs. W v. Tirozzi*, 832 F.2d 748 (2nd Cir. 1987) .................. 10 - 12

*Praino v. Board of Education of Wappingers Central School Dist.*,
   112 F.3d 505 (2ND Cir. 1997) .................. 11

*Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir. 1986) .................. 15

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) .................. 7

*Turner-Simmons v. U.S.*, 2005 WL 1155222 (N.D. Ga. 2005) .................. 10

*Weinberger v. Salfi*, 422 U.S. 749 (1975) .................. 12

*Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 180 (9th Cir. 2001) .................. 15

**FEDERAL AUTHORITY**

26 U.S.C. § 7422 .................. 10

26 U.S.C. § 6330 .................. 9

48 U.S.C. § 142 .................. 1

Fed. R. Civ. P. 23 .................. *passim*

**MISCELLANEOUS**

Dept. of Treasury, Final Regulations, 4830-01 (March 2003) .................. 13

IRS Publication, Collection Appeal Rights, http://www.irs.gov/pub/irs-pdf/p1660.pdf ... 9

NEWBERG ON CLASS ACTIONS (Thompson West (2002)) .......................... 4-6, 14

S. Rep. 105-174, at 67 (1998) ............................................. 6

## I. INTRODUCTION

**This case involves an <u>admitted</u>, systematic deprivation of due process rights by the Defendant, Government of Guam.** The Internal Revenue Code ("I.R.C") was amended in 1998 and applies to Guam through the Organic Act. 48 U.S.C. § 142. The Government of Guam completely ignored its responsibilities despite the clear mandates of the statute, and failed to implement or comply with the statutory requirements of the I.R.C. 1998 amendments. Defendant helpfully points out on Page 25 of its Opposition that "...the Government of Guam has been complying with all of the notice requirements for well over a year now." <u>That leaves only a 5 year period of **admitted** noncompliance for redress in this matter</u>.

**This is a "standardized documents" case, where every taxpayer class member, and the representative Plaintiffs, the Dacanays, were affected in exactly the same way, by exactly the same standardized documents: the defective notices.** Defendant seeks to mislead this Court into believing that Plaintiffs' claims involve an individualized investigation or re-audit of the assessed amounts owed by each taxpayer class member; this is untrue. Plaintiffs do not seek to disrupt this process, only the wrongful collection efforts which were uniformly in direct violation of I.R.C. mandated due process safeguards.

**This case should properly be litigated as a class action.** This case is particularly suited to the class action format. The Ninth Circuit has held that class actions are generally appropriate when "standardized documents" are at issue. *Abels v. JBC Legal Group, P.C.*, 227 F.R.D. 541 (9th Cir. 2005). The Government of Guam has violated the due process rights of thousands of Guam taxpayers by sending out statutorily required standardized documents that uniformly failed to contain the due process protections mandated by the I.R.C.. Plaintiffs' Amended Complaint alleges that, because these standardized documents – **notices of deficiency, notices of lien,** and **final notices/notices of intent to levy** – are defective, under the reasoning of *Marangi v.*

*Government of Guam*, 319 F.Supp.2d 1179, 1184 (D.C. Guam 2004),[1] the collections the Government of Guam has obtained from taxpayer class members who were issued these defective notices during the time period at issue are void.

Defendant, in its discovery responses, has identified the number of taxpayer class members who paid taxes, and the amount paid, after receiving defective notices.

- **115** taxpayers paid **$4,271,742.58** in taxpayer money following the issuance of defective Notices of Deficiency. (*See* Benjamin Dec., ¶ 4, Ex. 3 at answer to interrogatories nos. 4, 9)
- **2,054** taxpayers paid **$25,497,701.27** in taxpayer money following the issuance of defective Notices of Lien. (*See* Benjamin Dec., ¶ 4, Ex. 3 at answer to interrogatories nos. 3, 8).
- **555** taxpayers paid **$4,421,607.97** in taxpayer money following the issuance of defective Final Notices/Notices of Intent to Levy. (*See* Benjamin Dec., ¶ 4, Ex. 3 at answer to interrogatories nos. 1, 6).

The Dacanays are individuals who paid income taxes to the Government of Guam after being issued a defective Final Notice/Notice of Intent to Levy and a defective Notice of Lien sent to them by the Government of Guam, and having had an improper lien filed against their assets and property[2]. On April 4, 2003, the Dacanays paid taxes after receiving these defective notices (*See* Pablo Dec., ¶¶ 33, 35, 39), and having an illegal lien asserted against their assets and property. The Dacanays, on behalf of the putative taxpayer class, seek a declaration or a judgment that all of these collections are void as a

---

[1] The *Marangi* court reasoned that "[t]he Government of Guam, by not including such information in the Notices of Deficiency sent to the plaintiffs, failed to comply with an important notice requirement, thereby rendering the notices fatally deficient and thus void."

[2] Defendant asserts at page 13 of the Opposition that "[i]n July 2000, Plaintiffs received notice of their right to contact a Taxpayer Advocate." This is sadly representative of the state of veracity of Defendant's careless assertions. Defendant admits in its response to Plaintiffs' Interrogatory No. 11, that the office of the Taxpayer Advocate was not established until October 5, 2004, and in its response to Interrogatory No.12, that it did not begin including a notice of same in its Notice of Deficiency until January 10, 2005.

matter of law. All legal defenses that might be asserted by Defendant will apply to all taxpayer class members, including the Dacanays, uniformly.

***Defendant's opposition to class certification fails to address the proper issues.*** Defendant's opposition to Plaintiffs' motion for class certification suffers from the same lack of attention to detail and misdirection as the Government of Guam's efforts to beat taxpayers into submission while denying them the due process rights mandated by the United States Congress. Defendant attempts to characterize this as a collection of taxpayers seeking individual audits of their returns in "tax refund" cases, which it is clearly not. Defendant dedicates four pages of its opposition to disputing numerosity, notwithstanding Defendant's prior admission in its interrogatory responses that there are 2,724 taxpayer class members who had $34,191,051.82 wrongfully collected or taken from them. (*See* Benjamin Dec., ¶ 4, Ex. 3, at answers to interrogatories nos. 1, 3, 4, 6, 8, 9). Defendant's brief dedicates a further eight pages to disputing typicality despite the fact that every taxpayer class member who is a member of the putative class was denied his or her due process rights *in exactly the same way, and by exactly the same defective documents, as every other taxpayer.*

Defendant mistakenly asserts that Plaintiffs' claims are atypical, based on their failure to exhaust their administrative remedies or to comply with the statute of limitations[3]: both issues are exactly the type of uniform affirmative defenses that class actions are designed to effectively litigate for the entire class. Plaintiffs and the class have properly alleged that the very systematic and intentional failure to advise taxpayer class members of their rights has the legal effect of creating estoppel, waiver, or excuse from compliance for the reason of futility.

---

[3] This Court has previously considered both of these issues. In the Order Re Motion to Dismiss, dated Sept. 9, 2005, Judge Otero granted Plaintiffs leave to amend to include in their Amended Complaint, allegations why they, and the members of the taxpayer class, are excused from the general requirement that they exhaust their administrative remedies, and why Defendant should be estopped from asserting the statute of limitations, or why the statue of limitations was tolled. Order at page 7, footnote 8, and page 8, line 8, through page 13, line 7, and at page 3, lines 11 to 13.

Defendant asserts on page 15 of its Opposition that, because it wrongfully collected tens of millions of dollars from Guam taxpayer class members[4] by depriving them of their due process rights, the Dacanays "cannot be trusted" to serve as able representatives of the more "monied" class, because Defendant was only able to wrongfully take $3,514.09 from the Dacanays, a "worthless" amount. This statement misconstrues class action procedure and the typicality requirement. See NEWBERG ON CLASS ACTIONS, Vol. 1 at 368-369, (Thompson West (2002))[5]. Defendant's trust issues seem oddly misplaced here.

Defendant attempts to mislead the Court, by asserting, without any authority whatsoever, that because Plaintiffs "paid" taxes <u>from other funds owing them from other tax divisions</u> after receiving a defective Notice of Lien, and having an actual Lien asserted thereon, that they never really "paid" any taxes after a imposition of a lien. Defendant also attempts, again without authority, to characterize these payments, made after the hammer of defective notices has been swung at Plaintiffs, as "voluntary," and even goes so far to assert, without authority, that since Defendant has a right to "offset" refunds or monies owed with sums from other divisions, <u>that due process is not required if the money is obtained by offset</u>.

Defendant asserts throughout its Opposition and the Declaration of Pablo that Plaintiffs were at various stages *probably* provided various IRS publications which "contained numerous facts regarding the rights of taxpayers in collections proceedings." (Opp. at p. 3, line 8, line 22). These assertions ring hollow in light of Defendants admission that their notices failed to comply with the *actual statutory requirements*, and are also improper argument on the merits of the claims herein.

---

[4] $131,642 per taxpayer class member, Defendant asserts.

[5] "While some courts have suggested that differences in the amount of damages claimed will make a plaintiff's claim atypical, most courts have declined even to consider that argument, and nearly all of those that have ruled on it have rejected it outright." *Id.*

4

Defendant's final insult is delivered at page 14 of its Opposition, where it points out that, even if it has deprived the taxpayer class members of due process through its wrongful collection tactics, this class action will provide only temporary relief because Defendant has ten years to go back and try to collect the funds from the taxpayer class members again, maybe even doing it right the second time around. This is clearly a unique justification for throwing due process to the wind.[6]

## II. NUMEROSITY, COMMONALITY, AND TYPICALITY ARE CLEARLY PRESENT IN THE DEFINED CLASS

### A. The Allegations of Plaintiffs' Complaint Must Be Assumed True for the Purposes of Class Certification

In a Motion for Class Certification, the allegations in the complaint must be assumed true for the purposes of class certification. *See* NEWBERG, *supra,* Vol. 3 at 33. *See also Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177 (1974), *Miller v. Mackey Intern., Inc.,* 452 F.2d 424, 427 (5th Cir. 1971). Despite this well established rule of class certification procedure, Defendant attempts to misguide the Court and turn the class certification stage of this litigation into a dispute over the merits of Plaintiffs' claims. As in the example above, Defendant seeks to argue, through inadmissible hearsay and speculation, and notwithstanding its verified discovery responses admitting defective notices (*See* Benjamin Dec., ¶ 4, Ex. 3, at answers to interrogatories nos. 1, 3, 4, 6, 8, 9)), that some of the notices it *might* have sent "contained numerous facts regarding the rights of taxpayers in collection proceedings." Opp. at p. 3, line 8, line 22. Defendant also goes to great lengths to attempt to misconstrue its few actual potential affirmative defenses as issues relating only to Plaintiffs, when they are clearly merits issues that should be properly decided on behalf of the class as a whole.

///

### B. Numerosity Is Clearly Present

---

[6] Perhaps almost as bizarre is Defendant's suggestion that IRS privacy provisions "exempt" Defendant from class action suits, altogether. Opp. at page 22, footnote 6.

02078-00001 108399.1

5

Defendant seeks to dispute numerosity, again notwithstanding its own verified interrogatory answers admitting that 2,724 taxpayer class members were issued defective noncompliant notices. (*See* Benjamin Dec., ¶ 4, Ex. 3, at answers to interrogatories nos. 1, 3, 4). Rule 23(a)(1) requires a class be sufficiently numerous to make joinder of all members impracticable. While there is no "magic" number of class members required, "[c]ertainly, when the class is very large, for example, *numbering in the hundreds*, joinder will be impracticable." NEWBERG, *supra*, Vol. 1 at 246 (emphasis added). The numbers in this case easily meet this threshold.

### C. Commonality Is Clearly Present

This case arises out of a <u>single course of conduct</u> by the Government of Guam: the repeated and long-term issuance of *defective* and *noncompliant* Notices of Deficiency, Notices of Lien, and Final Notices/Notices of Intent to Levy despite the statutory requirements. In explaining the adoption of protections through the Restructuring and Reform Act of 1998, the Senate Committee stated that taxpayers should be afforded adequate notice of collection activity, and a meaningful hearing *before* the IRS deprives them of their property: The Committee stated:

> ...The Committee believes that the following procedures designed to afford taxpayers due process in collections will increase fairness to taxpayers.

S. Rep. 105-174, at 67 (1998). The deprivation of any and all of those required notices resulted in a <u>single injury</u>: a deprivation of due process for Plaintiffs and the class members. Plaintiffs and taxpayer class members all seek the same relief: the ability to submit claims for refunds of the full amount of improperly collected taxes and to recover the full amount of improperly collected taxes owed to them by the Government of Guam. Further, "[c]lass treatment is not precluded by the fact that the determination of the refund amount might require individualized assessment." *Appoloni v. U.S.*, 218 F.R.D. 556, 562 (W.D. Mich. 2003) (certifying tax refund action for class treatment.) Here, the amount of each refund is *the full amount each taxpayer paid in taxes*, and no "reauditing" is required

whatsoever as in a traditional "tax refund" case.

The application of the governing federal and Guam statutes to these claims will be uniform. All claims in this case emanate from uniform facts and raise uniform issues of law, which will determine <u>as a class</u>, whether the deficient and nonconforming notices to taxpayer class members are void, and whether the taxes were improperly collected as a result. (See Motion for Class Certification at p. 12).

Tellingly, Defendant's response to the 14 common issues set forth by Plaintiffs in their Motion for Class Certification is to state that they "will not go through them," because the claims involve 3 types of notices. (*See* Opp. at p. 18) Defendant can set forth no real argument that this proposed class does not meet the commonality requirement.

### D. Plaintiffs' Claims Are Typical of the Class

Fed. R. Civ. Proc. 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147 (1982). There is no requirement that the claims of the class representatives be *identical* to the claims of the class members. See *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (*citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), where the court stated that "'[u]nder the rule's permissive standards, representative claims are "typical" if they are reasonably coextensive with those of absent class members; *they need not be substantially identical.*'") (emphasis added)

#### (1) **Plaintiffs And Class Members Were Injured by a Denial of Due Process**

Defendant attempts to argue that Plaintiffs do not meet typicality because they have not suffered an actual injury. (Opp. at p. 6). It is long established in this nation that under the 5th Amendment of the Constitution, no person shall be deprived of their life, liberty or property without due process of law. When the Government of Guam placed a lien on "all property" belonging to the Dacanays, without giving the proper notice as required by statute, this constituted a due process violation – an actual injury – the
02078-00001 108399.1

7

Defendant's claim to the contrary. Defendant admits, through the Declaration of Pablo that shortly after the lien was asserted against the Dacanays, Ms. Dacanay went to the DRT office and requested that the DRT take monies from her so that they might release the lien the DRT had filed. See ¶¶ 35, 39. The lien thus had its intended coercive result.

### (2) Plaintiffs' Alleged Agreement to the *Amount* of Taxes Assessed Does Not Waive Their Right to Other Due Process Protections.

Incredibly, Defendant argues that Plaintiffs have no claim regarding a notice of a lien, because "they had already agreed to the amount of unpaid taxes assessed" and waived their rights to "exercise [their] appeal rights... or to contest the findings in this report" (Opp. at p. 9, *citing* Pablo Dec. ¶ 16). Defendant attempts to intentionally misconstrue the effect of an agreed assessment, and wrongfully interpret it as a blanket waiver of any and all further due process protections on behalf of any member of the proposed taxpayer class. The Form 4549 waiver of right to contest the "findings in this report" only refers to the amount of taxes assessed. (See Pablo Dec., Ex. Q, stating that the balance due was $5,715.00.) Form 4549 does not mention, and has absolutely nothing to do with, the notice requirement for Notices of Lien or Final Notices/Notices of Intent to Levy, and Defendant has put forth no support for such a proposition[7]. An agreement to one's tax assessment does not waive *future rights* to due process afforded regarding a Notice of Lien, Final Notice/Notice of Intent to Levy or any other process or procedure. The purpose of the Notice of Lien and Notice of Levy is to inform taxpayers of the availability of a Collection Due Process (CDP) hearing which provides a forum not only for a taxpayer to contest the amount of assessed taxes, but to raise numerous other issues, including spousal defenses, appropriateness of collection actions, other collection actions, and collection alternatives, such as payment by installment agreement, offers in compromise, posting a bond, or substitution of other assets for payment. (See IRS

---

[7] See Opp. at p. 9, where defendants propose that "Plaintiffs *arguably* were not entitled to a Notice of Lien . . ." but provide no support for this assertion.

02078-00001 108399.1

8

Publication, Collection Appeal Rights, http://www.irs.gov/pub/irs-pdf/p1660.pdf.). In any event, even if Defendant was correct that such a "waiver" issue did exist, again, it should properly be decided on a class wide basis.

Defendant insists that, because it removed a lien from the Dacanay's property only ten days after recording that lien, no notice of lien was even required. This assertion is ludicrous. Improper notice was given; the lien was asserted, the Dacanays paid taxes, then the lien was released; all by defendant's own admission. (*See* Pablo Dec., ¶¶ 35, 39).

### (3) Plaintiffs Did Not Receive Proper Notices of Intent to Levy

Defendant asserts in its Opposition, again ignoring its prior verified discovery responses, that the Dacanays received a Final Notice/Notice of Intent to Levy that complied with 26 U.S.C. § 6330. Defendant's own document production demonstrates that the Dacanays received a Final Notice/Notice of Intent to Levy that failed to mention almost all specific statutorily required protections. *See* Kelly Dec., ¶ 4, Ex. B. This document was sent to the Dacanays on March 20, 2003. The Dacanays suffered an injury when they received this defective notice which hid from them – and therefore deprived them of – their specific due process rights.

## III. DEFENDANT'S AFFIRMATIVE DEFENSES ARE NOT A BAR TO CLASS CERTIFICATION

Defendant spends a considerable portion of its Opposition arguing that the Dacanays do not satisfy the typicality requirement because (1) they failed to exhaust their administrative remedies and (2) their claims are barred by the statute of limitations. These are not in fact typicality issues, but in go directly to the merits of the suit as they affect all or large numbers of the putative taxpayer class members. In fact, Defendant has advised the Court that it intends to file belated "dispositive motions" on these very issues, to be heard at the same time as this motion.

### A. Alleged Failure to Exhaust Administrative Remedies

02078-00001 108399.1

9

In conformance with this Court's Order of September 9, 2005,[8] Plaintiffs have alleged in detail why they, and the members of the taxpayer class, are excused from compliance with the § 6511 requirement that they exhaust their administrative remedies by requesting a refund, and why Defendant is estopped in asserting this defense in this matter. These detailed allegations appear at paragraphs 16, 17, 18, 19, 20, 21, 25, 26, 36, 37, 38, 39, 44, 45, 52, 53, 54, 55, 56, 57, 58, and 59 of the Amended Complaint, filed with this Court on October 7, 2005.

Although generally 26 U.S.C. § 7422 requires individuals bringing a tax refund suit to exhaust administrative remedies, the case at bar is not a traditional tax refund suit.

Unlike traditional tax refund suits, the Plaintiffs here are not asking the Court to reassess the amount of taxes owed. The amount of taxes owed by the Plaintiffs for the 1998 and 1999 tax years are <u>not in dispute</u>. Rather, the Plaintiffs are asking for <u>system wide relief</u> - whereby the Government of Guam would be required to notify all taxpayers who paid taxes after receiving such defective notices that the taxes were improperly collected, and that the taxpayers may be refunded the full amount improperly collected.

Defendant cites to the unpublished trial court opinion in *Turner-Simmons v. U.S.*, 2005 WL 1155222 (N.D. Ga. 2005)[9], where the Court was addressing a few individuals in Georgia who did not receive proper notices that were sent to other taxpayers. Here, Plaintiffs bring to the Court's attention not an issue of an individual "case by case" mistake by the Defendant, but rather a system-wide violation involving failure to provide proper notification to Guam taxpayers.

Courts have held that such system wide violations warrant a waiver of the exhaustion of administrative remedies requirement. In *Mrs. W v. Tirozzi*, 832 F.2d 748

---

[8] At page 7, footnote 8, and page 8, line 8, through page 13, line 7.

[9] Plaintiffs do not believe such a citation is proper. See Ninth Circuit Rule 36-5, which prohibits citation to unpublished Ninth Circuit opinions. This rationale would appear to be even more applicable to unpublished trial court opinions, which have been subjected to <u>no</u> appellate review at all.

(2nd Cir. 1987), parents of handicapped children brought a civil rights action to challenge the adequacy of due process hearings under the Education of the Handicapped Act (EHA). The EHA also calls for an exhaustion of administrative remedies before the aggrieved party can file a civil action. (*Id.* at 756). The Court in *Tirozzi* observed that despite the mandatory exhaustion requirements under the statute, "*exhaustion is not an inflexible rule.*" *Id.* (emphasis added) In that case, the Court recognized <u>three general cases in which failure to exhaust administrative procedures would be excused</u>: (1) when such procedures would be futile; (2) when "an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law;" and (3) when the administrative remedies would be inadequate to provide the relief sought. *Id., also see, Praino v. Board of Education of Wappingers Central School Dist.*, 112 F.3d 505 (2nd Cir. 1997). The exhaustion requirement was excused because it was a situation of system wide abuse, and therefore system wide relief sought would not be provided under administrative procedures. *Id.*

Similarly, the Supreme Court in *Bowen v. City of New York*, 476 U.S. 467 (1986), also recognized a situation where otherwise mandatory exhaustion of administrative remedies would be excused. In *Bowen*, the Court exempted the exhaustion of administrative remedies for the disability claimants whose time to pursue an administrative appeal had lapsed because of the fact that the Government was routinely – and in a systematic fashion – denying benefits pursuant to an illegal policy. The claimants were making a similar challenge to the Government's failure to follow regulations. The Court recognized that they would be injured if the exhaustion requirement was enforced against them, stating:

> we should be especially sensitive to this kind of harm where the Government seeks to <u>require claimants to exhaust administrative remedies merely to enable them to receive the procedure they should have been afforded in the first place.</u>"

*Id.* at 484. The *Bowen* Court explained that the reason behind having the exhaustion

02078-00001 108399.1

11

requirement is to prevent premature interference with the agency process, to allow the agency to function efficiently and correct its own errors and use its experience, and to compile a record adequate for judicial review. *Id.*, citing *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975). The Court also noted that exhaustion could be waived in such a situation – as is clearly present in this case – of a "<u>systemwide, unrevealed policy that was inconsistent in critically important ways with established regulations.</u>" *Id.* at 485. In allowing for an exemption, the *Bowen* court explained:

> this case is materially distinguishable from one which
> a claimant sues.. alleging mere deviation from applicable
> regulations... In the normal course, such individual errors
> are fully correctable upon subsequent administrative review
> since the claimant on appeal will alert the agency to the
> alleged deviation.

*Id.* In the case of this type of systemwide violation, where the agency is ignoring the facts before it, there is nothing to be gained from the agency expertise. *Id.*

Just as in *Bowen*, Plaintiffs reiterate that this case does not involve a situation where there was an individual mistake by the agency, correctable by review according to the agency's expertise. Rather, here the Guam taxpayers have repeatedly been denied the rights afforded to taxpayers under the Internal Revenue Code, and the policy of denying such rights was never revealed to the taxpayer. Under these particular circumstances, similar to those in *Tirozzi* and *Bowen*, it would be futile to require each individual to exhaust administrative remedies where claimants are denied due process rights based on a system wide, unrevealed policy which is inconsistent with the established regulations. *See Id.*

Plaintiffs have clearly pled why they should be excused from exhausting administrative remedies and why it would have been futile for them to attempt to do so. At this juncture, Plaintiffs' allegation must be accepted as true, the class certified, and the issues decided as to the class as a whole.

**B. Alleged Bar of the Statute of Limitations**

In conformance with this Court's order of September 9, 2005,[10] Plaintiffs and the members of the taxpayer class have also alleged in detail why Defendant is estopped from asserting the statute of limitations, or why the statute of limitations is tolled. These detailed allegations appear at paragraphs 62, 63, 64 and 65 of the Amended Complaint filed with this Court on October 5, 2005. Again, at this juncture, Plaintiffs' allegations must be accepted as true, the class certified, and the issues decided as to the class as a whole.

According to the Department of Treasury Regulations, "a cause of action under this section accrues when the taxpayer has had a reasonable opportunity to discover all essential elements of a possible cause of action." Dept. of Treasury, Final Regulations, 4830-01 (March 2003). Plaintiffs did not bring a cause of action within 2 years of the time when the tax was paid as called for under § 6511 because they were wrongfully deprived of the opportunity to know or learn of the elements of their claim prior to this time.

It would be patently inequitable to allow Defendant to hide mandated protections from Plaintiffs and the taxpayer class, then turn around and claim that they have failed to timely assert the very rights Defendant concealed from them. Furthermore, as seen in *Bowen, supra*, all of the claimants who allowed their administrative remedies to expire by not bringing a claim within the statute of limitations, did so because they "were entitled to believe that the Government's determination of ineligibility was the considered judgment of an agency faithfully executing the laws of the United States. . . they did not and could not know that those adverse decisions had been made on the basis of a systematic procedural irregularity that rendered them subject to court challenge." *Id*. In the instant case, tolling of the statute of limitations would not *defeat* but be *consistent with* the purpose of the underlying statute. Again, this affirmative defense, uniform to the Plaintiffs and taxpayer class members, would best be determined in the class action setting.

---

[10] At page 3, lines 11 to 13.

13

## IV. CERTIFICATION OF ALL CLAIMS UNDER 23(b)(1), 23(b)(2), AND 23(b)(3) IS APPROPRIATE

Here, the criteria for certification under 23(b)(1) and (b)(2) are easily met. As required under Rule 23(b)(1), prosecution of separate actions could create a risk of inconsistent adjudications. *See* Rule 23(b)(1)(A). Defendant's argument that separate actions would not result in incompatible standards for Defendant must be rejected as based on wishful thinking. If this action is not certified as a class action, none of this court's determinations will bind any other aggrieved taxpayer. There is no reason other members of the putative class could not then file multiple separate actions, each seeking declaratory and/or injunctive relief similar to that sought in this action. If several such actions were brought, the result could well be differing declarations as to whether or not Defendant was or was not estopped from asserting failure to exhaust administrative remedies or that the statute of limitation was tolled. More critically, each action could result in differing injunctive remedies as to how the due process violations must be remedied by Defendant.

Further, this action will "as a practical matter be dispositive of the interests of the other members not parties." Fed. R. Civ. P. 23(b)(1)(B). It is dispositive of all class members' interest in establishing whether their due process rights have been violated, and in establishing a notice and refund process.

In addition, this action has the characteristics of those generally recognized as suitable for certification under Rule 23(b)(1), *i.e.*, it challenges the conduct or practices of a defendant required by law to deal with all class members in the same way, the relief sought is a combination of injunctive and monetary relief, and other individual suits are reasonably expected to be filed. *See* NEWBERG, *supra*, Vol. 2 at 26-33 (discussing characteristics of practical candidates for certification under Rule 23(b)(1)(A)).

These claims also fit the certification category defined by Rule 23(b)(2). Defendants have "acted or refused to act on grounds generally applicable to the class,

14

thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . " Fed. R. Civ. P. 23(b)(2). As noted above, the government conduct at issue here was uniformly applied to all class members and the declaratory and injunctive relief sought will be as well. Thus, the claims satisfy the 23(b)(2) criteria. Furthermore, the fact that Plaintiffs' claim also seeks money damages in the form of the actual refund of improperly collected taxes does not preclude certification under 23(b)(2). In the Ninth Circuit:

> Class actions certified under Rule 23(b)(2) are not limited to actions requesting only injunctive or declaratory relief, but may include cases that also seek monetary damages.

*Molski v. Gleich*, 318 F.3d 937, 947 (9th Cir. 2003), *quoting Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir. 1986).

Defendant's repeated reliance on *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 180 (9th Cir. 2001) for the proposition that a class cannot be certified where the primary relief sought is monetary is a distortion of that case's holding, as it ignores the facts which lead to the holding in the case: the injunction sought was a minor, ancillary portion of the relief sought.

> We conclude that Zinser's proposed medical monitoring subclass is not appropriate for certification pursuant to Rule 23(b)(2). The amended class action complaint here seeks the establishment of a reserve fund for past and future damages, compensation for future medical treatment, plus other compensatory and punitive damages. Although the complaint also seeks "full and proper research into alternative methodologies for remedying the condition of each patient/class member," this injunctive relief is merely incidental to the primary claim for money damages.

*Id.* at 1196. As stated earlier, the focus of this case is on a declaration that Defendant denied due process to its taxpayers, and the issuance of an injunction establishing a notification and claims process by which the aggrieved taxpayer class members may individually apply for and obtain refunds.

Finally, questions of law and fact common to the class members predominate over any questions affecting only individual members, thereby satisfying Rule 23(b)(3). The

02078-00001 108399.1

15

Case 1:05-cv-00017   Document 101   Filed 06/30/2006   Page 19 of 20

over any questions affecting only individual members, thereby satisfying Rule 23(b)(3). The predominance inquiry focuses on the relationship between common and individual issues and tests whether the classes are cohesive enough to warrant adjudication by representation. *Amchem Products Inc. v. Windsor*, 521 U.S. 591, 594 (1997). Throughout this brief, Plaintiffs have demonstrated that the injury and relief sought by all potential class members are the same – a system wide injury of deprivation of due process by Defendant's failure to comply with the statutorily mandated notification provisions in taking collection actions, and a system wide redress of having the Court require the Government of Guam to implement a proper notification procedure and refund procedure to remedy these abuses. These are the predominant issues in the case. Plaintiff again reiterates that this is not a tax refund action which requires the re-auditing and individual inquiry into each claim, rather all class members are seeking the same relief.[11]

Dated: June 28, 2006

KIRTLAND & PACKARD LLP

By: _____
MICHAEL L. KELLY
Attorney for Plaintiffs, Henry S. Dacanay
and Laura Lynn Dacanay
and all others similarly situated

Dated: June 29, 2006

ZAMSKY LAW FIRM

By: _____
STEVEN ZAMSKY
Attorney for Plaintiffs, Henry S. Dacanay
and Laura Lynn Dacanay
and all others similarly situated

---

[11]Defendant wrongly tries to analogize this case to *Amchem, supra*, where the Court ruled against certification because the Plaintiffs could not satisfy predominance. However, *Amchem* involved a very different set of circumstances, dealing with a mass-tort injury case, whereby the Court would be required, in adjudicating the case, to assess each individual's injury according to their medical histories, and tailor separate remedies and medical monitoring for claimants according to the specific injuries. In the case at bar, however, Plaintiffs have suffered a single injury in the denial of proper notification, and are asking the Court for a single remedy.