SHANNON J. TAITANO, ESQ.
OFFICE OF THE GOVERNOR OF GUAM
Ricardo J. Bordallo Governor's Complex
Adelup, Guam 96910
Telephone: (671) 472-8931
Facsimile: (671) 477-6666

**EDUARDO A. CALVO, ESQ.**
**JANALYNN C. DAMIAN, ESQ.**
**DANIEL M. BENJAMIN, ESQ.**
**CALVO & CLARK, LLP**
Attorneys at Law
655 South Marine Corps Drive, Suite 202
Tamuning, Guam 96913
Telephone: (671) 646-9355
Facsimile: (671) 646-9403

Attorneys for *the Government of Guam*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF GUAM

| | |
|---|---|
| HENRY S. DACANAY and LAURA LYNN DACANAY,<br><br>Plaintiffs,<br><br>vs.<br><br>GOVERNMENT OF GUAM,<br><br>Defendant. | Civil Case No. CIV05-00017<br><br>**REPLY IN SUPPORT OF THE GOVERNMENT OF GUAM'S MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT** |

The Government respectfully asks that its motion be granted and this case dismissed. Plaintiffs neither exhausted their claims, nor have they presented any facts or law supporting non-exhaustion. Their claims are untimely on their face, and their attempts to avoid the statute of limitations are contrary to Supreme Court law. The exceptions proposed by Plaintiffs have never been applied (and indeed have been rejected) as to the IRS under the Internal Revenue Code ("IRC"). They are equally inapplicable to the Government of Guam, which operates under the same laws.

On the merits, Plaintiffs have abandoned their notice of deficiency claim, and are unable to offer any evidence showing that the notices of lien or intent to levy sent caused any unlawful collection of taxes. Indeed, Plaintiffs fail to contradict the Government's evidence that Plaintiffs were properly notified of the collections process. All of this may explain Plaintiffs' desperate request, sandwiched in the midst of their brief, to amend to name new plaintiffs. This request—which is impermissible because no amendment is allowed where the initial plaintiffs do not have claims—is an implicit concession of a fact that all can now see: The Dacanays never had a claim.

## ARGUMENT

### I. FAILURE TO EXHAUST REQUIRES DISMISSAL

#### A. Plaintiffs' Assertion of Futility Fails as a Matter of Law

##### 1. Futility Is Not an Exception to the Internal Revenue Code

26 U.S.C. § 7422(a) is clear: "No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, ... , or of any sum alleged to have been . . . in any manner wrongfully collected, until a claim for refund or credit has been duly filed...." The Supreme Court and Ninth Circuit have held that there are no non-statutory exceptions. *Rock Island R.R. Co. v. United States*, 254 U.S. 141, 143 (1920) ("If [the Government] attaches even purely formal conditions to its consent to be sued those conditions must be complied with...."); *Quarty v. United States*, 170 F.3d 961, 972 (9th Cir. 1999). Yet, without explaining why an administrative claim could not have been filed, Plaintiffs insist that exhaustion should be excused, citing *Simpao v. Govt. of Guam*, Guam Dist. Ct. CV04-00049 (March 17, 2005 Order). (*See* Opp. at 8-9). But, Plaintiffs fail to explain how this case is

like *Simpao*. There, the issue was that a taxpayer arguably could not file a claim because the relevant form was blocked out. *Id.* at 7-9. Here, it is undisputed that Plaintiff could have filed a claim. (Pablo Dec. ISO Motion for SJ at ¶ 5). Whatever *Simpao* stands for in the face of *Rock Island* and *Quarty*, it does not apply to the facts of this case.

Plaintiffs also rely on *Bowen v. City of New York*, 476 U.S. 467, 478 (1986). That case held that application of 'traditional equitable tolling principle'" to Social Security disability claims "is fully 'consistent with the overall congressional purpose' and is 'nowhere eschewed by Congress.'" *Id.* at 480 (quotation omitted). It then held that exhaustion also could be excused "for the same reasons requiring tolling of the statute of limitations." *Id.* at 482. But, as to the IRC, the Supreme Court has determined that traditional equitable tolling principles are *inconsistent* with Congress' intent, and therefore rejected their application. *United States v. Brockamp*, 519 U.S. 347, 352-53 (1997). Indeed, no case has extended *Bowen* in any other context, or ever acknowledged that it applies to anything but SSI cases under 42 U.S.C. 405(g).

*Bowen* also excused exhaustion only where the plaintiffs "would be irreparably injured were the exhaustion requirement" enforced because "persons have been hospitalized due to the trauma of having disability benefits cut off. Interim benefits will not adequately protect plaintiffs from this harm. Nor will ultimate success if they manage to pursue their appeals." *Id.* at 484 (quotation omitted and emphasis added). Thus, following *Bowen*, the Ninth Circuit adopted a three-part test for determining whether judicial waiver applies including whether the matter is collateral, whether "denial of relief will cause irreparable harm," and whether the matter is one "whose resolution [by administrative means] would not serve the purposes of exhaustion (futility)." *Kildare v. Saenz*, 325 F.3d 1078, 1082 (9th Cir. 2003) (internal citations omitted). Here, there is no risk of irreparable injury in requiring a taxpayer who wishes to challenge an assessment or collection procedure to first go through the administrative procedures of the IRS or DRT. To the contrary, such an approach may well be quicker; the Government can release a lien, returned levied property, correct procedures, clarify the taxpayer's status, and take many other steps that either would prevent litigation or clear the record. *Bowen*, 476 U.S. at 484 (explaining that exhaustion is generally required to prevent "premature interference with agency processes, so

*CIVIL CASE NO. 05-00017*

2

{G0013794.DOC;2}
Case 1:05-cv-00017 Document 110 Filed 07/20/2006 Page 3 of 12

that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.") (quotation omitted).[1]

Even farther off-target is Plaintiffs' reliance on *Mrs. W. v. Tirozzi*, 832 F.2d 748 (2d Cir. 1987). In that case under the Education of the Handicapped Act ("EHA"), the court explicitly recognized that not all of the EHA's "administrative remedies must be exhausted prior to invoking a civil action under § 1415(e)." *Id.* at 756 (citations omitted). This was because, "<u>Congress</u> specified the situations in which before filing suit, exhaustion of the due process and review procedures set forth in [the EHA] <u>is not a prerequisite</u>." *Id.* (citations omitted and emphasis added). The Court explained that there were certain statutory exceptions, *see id.*, and thus that the plaintiff was able to prevail despite non-exhaustion of their claims because they "claim[ed] to fall within these statutory exceptions." *Id.* at 757. But this case is brought under the IRC (as mirrored to Guam), which recognizes no such statutory exceptions.

### 2. Plaintiffs Have Not Submitted *Any* Evidence Demonstrating Futility

Plaintiffs also have done nothing to substantiate their futility theory. The Government submitted evidence showing that: (1) the Dacanays were informed of their appeal rights; and (2) there was no barrier to their filing an administrative claim to DRT. (Pablo Dec. ISO Opp. to Class Cert. at ¶¶ 25, 33 & Exs. K, L, O, V; Pablo Dec. ISO Motion for SJ at ¶ 5). In response, Plaintiffs have not proffered any contrary evidence *at all*. There is no declaration or other evidence showing that the Dacanays were not informed of their rights or that they could not have filed a claim and received effective relief (as were the facts in *Simpao* and *Bowen*). All that Plaintiffs have is assertions in their brief. Those cannot carry the burden on summary judgment.

### B. Plaintiffs' Alternative Assertion of Equitable Estoppel Is Equally Unavailing

### 1. Estoppel Is Unavailable as a Matter of Law

Plaintiffs' alternative assertion of equitable estoppel also fails. (*See* Opp. at 12-14). In *Brockamp*, 519 U.S. at 352-53, the Court held that equitable tolling cannot apply to the statute of

---

[1] In *Bowen*, the Court also found that "the relief afforded by the District Court [wa]s fully consistent with the policies underlying exhaustion" because the district court "did not order that class members be paid benefits." *Id.* Plaintiffs are seeking monetary relief—a tax refund.

*CIVIL CASE NO. 05-00017*

3

limitations in tax refund cases because Congress defined absolute preconditions for a refund suit. Courts following *Brockamp* subsequently have rejected any estoppel arguments. *Danoff v. United States*, 324 F. Supp. 2d 1086, 1099-1100 (C.D. Cal. 2004) (collecting cases). Plaintiffs believe they avoid *Brockamp* by asserting estoppel under 26 U.S.C. § 7422 (exhaustion), and not 26 U.S.C. § 6511 (statute of limitations). But *Brockamp* does not leave room for any non-statutory exceptions, be it to the statute of limitations or exhaustion. The provisions of the IRC define absolute preconditions for suit. *See Brockamp*, 519 U.S. at 352-53.

Indeed, in *Angelus Milling Co. v. C.I.R.*, 325 U.S. 293, 296 (1945), the Court held that while the specificity of a tax refund claim can be waived, the obligation to make the claim cannot: "Insofar as Congress has made explicit statutory requirements, they must be observed <u>and are beyond the dispensing power of Treasury officials</u>." *Id.* (emphasis added). Thus, courts have recognized their inability to vary the terms of section 7422. *E.g. United States v. Rochelle*, 363 F.2d 225, 231 (5th Cir. 1966) ("Section 7422(a) has been uniformly interpreted as establishing a jurisdictional requirement that cannot be waived."). If it is beyond the power of officials to waive the exhaustion requirement, it is similarly beyond their power to take an action that estops the government from asserting the statute. No one—not the IRS and not the Government of Guam—can change the terms that Congress decided were required for a refund lawsuit. *Rochelle*, 363 F.2d at 231 ("[t]he United States unaccountably has failed to seek dismissal of this action on this ground, but this failure does not constitute a waiver of this defense" because statutory defense cannot be waived). Because the officials of the Government of Guam (like the IRS) lack the power to waive the exhaustion requirement, their conduct also cannot be grounds for estoppel.[2]

### 2. Plaintiffs Cannot Carry Their Burden Regarding Estoppel

Plaintiffs have failed to provide any evidence establishing the requirements of estoppel

---

[2] Plaintiffs' reliance on *Est. of Emerson v. Comm'r*, 67 T.C. 612, 617 (1977), is misplaced. That case did not involve exhaustion or any other jurisdictional issue; it involved an attempted claim of estoppel to prevent the IRS Commissioner from changing positions on a gift tax issue. *Id.* And, the court refused to apply estoppel, recognizing that even where it can apply to the IRS (in such a non-jurisdictional context), the doctrine is applied with "utmost caution and restraint" because the "policy in favor of an efficient collection of the public revenue outweighs the policy of the estoppel doctrine in its usual and customary context." *Id.* (citations omitted).

*CIVIL CASE NO. 05-00017*

4

that: (1) "a knowing false representation or concealment of material facts" was made to the Dacanays by the Government; (2) the Dacanays were "ignorant of the facts"; (3) the representation was made "with the intention that the [Dacanays] should rely on it," or (4) the Dacanays "actually and detrimentally relie[d]" on the representation. *Mukherjee v. I.N.S.*, 793 F.2d 1006, 1008-09 (9th Cir. 1986) (footnotes and citations omitted). They also have failed to produce any evidence, as required for government estoppel, that (5) the "estoppel . . . rest[s] on affirmative misconduct going beyond mere negligence"; or (6) "the public's interest will not suffer undue damage by imposition of the liability." *Id.*

To the contrary, the evidence shows the Government informed taxpayers of their rights in collection cases in Publications 594 and 1660, which were included with notices of intent to levy. (Pablo Dec. ISO Opp. to Class Cert. at ¶¶ 25, 33 & Exs. K, L, O, V). The only "evidence" submitted to the contrary are selected excerpts of the deposition of Joseph Rios, Jr. from *Marangi*. (Zamsky Dec. at Ex. A). But, Mr. Rios specifically qualified his testimony: "Okay, I wasn't part of the collections. Again I told you I was just detailed Deputy Tax Commissioner about two weeks ago, <u>I am not too sure as to if they have adopted these procedures.</u>" (*Id.* Ex. A at 9-13 (emphasis added)). In comparison, Mr. Pablo does supervise the collections branch, is familiar with its procedures, and has testified that the materials were included. (Pablo Dec. ISO Opp. to Class Cert. at ¶¶ 2, 25, 33 & Exs. K, L, O, V). The evidence also shows that, as recorded in memoranda dated September 1999, the Government modified its notices of intent to levy to inform taxpayers of their rights in collections proceedings. (Dec. of Janalynn C. Damian, submitted herewith ("Damian Dec.") at Ex. C; *see id.* Ex. B). Indeed, it is very telling that while Plaintiffs' counsel constructs inaccurate characterizations of the evidence to suggest facts are "admitted," Plaintiffs failed to so much as file a declaration asserting non-receipt of these publications, or to offer any argument as to why they were inadequate.

Finally, Plaintiffs offer no reason why, as a matter of public policy, estoppel is necessary here. Plaintiffs were free to raise their issues on an administrative level at any time. If that failed, they could go to the courts. But they do nothing to justify bypassing the administrative process.

## II. THE STATUTE OF LIMITATIONS BARS PLAINTIFFS' CLAIMS

### A. Non-Statutory "Excuse or Futility" Arguments Are Barred by *Brockamp*

In a paragraph bereft of citation, Plaintiffs assert that the statute of limitations cannot apply because they alleged "excuse or futility." (Opp. at 14:17-21). 26 U.S.C. § 6511 provides that a refund claim "shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later...." And, the Supreme Court has held that the only exceptions to that statute of limitations are statutory. *Brockamp*, 519 U.S. at 352-53. This unsupported argument cannot prevail.

### B. Plaintiffs' Concealment Theory Has No Factual or Legal Support

Plaintiffs next argue that requesting a collections due processing hearing can toll the statute of limitations under IRS Reg V-5277. (Opp at 14:24-28). They assert the Government's actions prevented them from requesting a hearing, and in turn theorize that *this* could toll the statute of limitations—without citing *any* support. (*See id.*) Assuming such unsubstantiated claims carried any weight, the now uncontroverted facts demonstrate that Plaintiffs received notice of their hearing rights, and that Plaintiffs' February 2003 payment of their 1998 taxes occurred, in any case, prior any allegedly defective notice being sent for that tax year. (Pablo Dec. ISO Opp. to Class Cert. ¶¶ 25, 32-33, 42). Meanwhile, the subsequent offset in December 2005 could occur with or without notice. *Fulgoni v. United States*, 23 Cl. Ct. 119, 126 (1991).

### C. Equitable Claims Cannot Be Used to Circumvent the Statute of Limitations

Plaintiffs assert that their claims for declaratory and injunctive relief are free from any statute of limitations. (Opp. at 15). The Court already rejected that argument as to exhaustion because the IRC provides the exclusive remedy in refund lawsuits. (Docket 19 at 13:23-26 ("Plaintiffs seek to use [their claims for injunctive and declaratory relief] as predicates for obtaining refunds. However, it is well-established that the Internal Revenue Code 'provides the exclusive remedy in tax refund suits.'" *Brennan v. Southwest Airlines*, 134 F.3d 1405, 1409 (9th Cir. 1998)). The IRC's statute of limitations is no different—it too cannot be circumvented.

### D. Plaintiffs' Lawsuit Is for Taxes Allegedly Paid in February 2003

Plaintiffs next argue—for the first time ever—that they are suing for the credited offset of

their 1997 and 1998 taxes that occurred in December 2005. (Opp. at 15:12-16:5). That is not the payment Plaintiffs brought suit to recover. Their amended complaint states quite plainly that they are suing to recover alleged payment in February 2003. (Docket 24 at ¶ 60). Indeed, Plaintiffs filed their original complaint in June 2005 and amended complaint in October 2005. That is months *before* the December 2005 offsets. This is a suit for a refund of the alleged February 2003 payments, and it is untimely. *See* 26 U.S.C. § 6511(a).

### E. 26 U.S.C. § 6532 Only Extends the Statute if an Administrative Claim Is Filed

Plaintiffs argue that under 26 U.S.C. § 6532, suit can be brought six months after filing of an administrative claim, adding to the two years in which to file an administrative claim. (Opp. at 16:8-18). Here, no administrative claim was filed, and so the additional six months never arose.

### F. Amendment to Name New Representatives Is Impermissible

Plaintiffs' counsel next attempts to throw their clients overboard and requests leave to amend to find new class representatives under *Best Buy Stores, L.P. v. Superior Court*, 137 Cal.App.4th 772 (2006). (Opp. at 16:21-27). In *Best Buy*, the issue was that an attorney was both the putative class counsel and representative, and so the concern was not that the representative lacked a claim (*i.e.*, lacked standing), but rather that there was a conflict of interest. *Id.* at 775-76.

But here, Plaintiffs have no standing because they never had valid claims. "[W]hen a plaintiff never had standing to assert a claim against the defendant, [he or she] may not substitute a new plaintiff, a new defendant, or a new claim for the purpose of creating jurisdiction. ... [T]here is no action...to amend, since the court is deprived of subject matter jurisdiction." *Lans v. Gateway 2000, Inc.*, 84 F. Supp. 2d 112, 116-17 (D.D.C. 1999) (citation omitted); *Summit Office Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278, 1284 (5th Cir. 1981) ("only proper way a claim could be made was to file a new complaint with new plaintiffs, a new class, and a new cause of action"); *see also Morongo Band of Mission Indians v. Cal. St. Bd. of Equalization*, 858 F.2d 1376, 1380-81 (9th Cir. 1988) ("If jurisdiction is lacking at the outset, the district court has 'no power to do anything with the case except dismiss.'") (citations omitted).

## III. PLAINTIFFS CANNOT ESTABLISH MERITORIOUS CLAIMS

### A. Plaintiffs Fail to Even Contest Their Right to a Notice of Deficiency

Although writing under the heading "Plaintiffs Have Pled Valid and Meritorious Claims" (Opp. at 17), Plaintiffs' defense of their claims on the merits immediately fails to even attempt any argument at all that Plaintiffs were statutorily entitled to a notice of deficiency (and, of course, this is because they were not). (*See* Opp. at 17-20). This then disposes completely of one of Plaintiffs' three basic claims, the claim concerning the notice of deficiency. It also makes irrelevant Plaintiffs' various references to Guam's failure to create a local taxpayer advocate office until 2005, as only a notice of deficiency has to notify a taxpayer regarding that office, not a notice of lien or intent to levy. *See* 26 U.S.C. §§ 6121(a), 6320, 6330.

### B. Plaintiffs Have No Claim Concerning the Notice of Intent to Levy

#### 1. Plaintiffs Received Adequate Notices of Intent to Levy

Rather than submit any actual declaration by the Dacanays themselves as to the alleged non-receipt of a notice of intent to levy or receipt of an inadequate notice, Plaintiffs argue that "Defendant's own document production demonstrates that the Dacanays received a *void*" Final Notice/Notice of intent to Levy that failed to include almost all specific statutorily required protections." (Opp. at 19:15-17). That is simply inaccurate.

First, the Pablo Declaration in support of the Government's opposition to certification has already established that notices of intent to levy and lien were accompanied by Publications 594 and 1660 that fully advised taxpayers of their rights under the Act. (Pablo Dec. ISO Opp. to Class Cert. at ¶¶ 25, 33 & Exs. K, L, O, V). Indeed, nowhere to Plaintiffs dispute actual receipt of these publication, and nowhere do Plaintiffs explain how these notices were inadequate.

Second, in response to Plaintiffs' Document Request No. 20, the Government produced memoranda dated September 1, 1999 and September 22, 1999 attaching updated versions of the Notices of Intent to Levy. (Damian Dec. ¶ 5 & Ex. C (containing the documents produced in response to document request no. 20, which are hand-numbered as pp. 155 to 158)). These memoranda state specifically that the updated notices were designed to implement the IRS Restructuring and Reform Act of 1998. (*See* Damian Dec. Ex. C at pp. 155 and 157). And, the

*CIVIL CASE NO. 05-00017*

{G0013794.DOC;2}

8

updated notice itself states specifically that DRT had "enclosed Publication 594 and Publication 1660 explaining your right to appeal." (*Id.* at p. 156; *see* also Pablo Dec. ISO Opp. to Class Cert. at Exs. O, V (the notices of intent to levy sent to the Dacanays, which are the same and state that DRT "enclosed [with them] Publication 594 and Publication 1660 explaining your right to appeal").

Third, in response to Plaintiffs' Document Request Nos. 14, the Government did produce Publication 594 (along with the notice of intent to levy) specifically to answer the question of what documents it had given taxpayers to comply with the requirement of notice of rights in collection cases. (Damian Dec. ¶ 4 & Ex. B (Defendants' production hand-labeled pages 120 to 141, which are the notice and Publication 594)). This publication is the same as Ex. K to the Pablo Dec. ISO Opp. to Class Cert., and it is the exact publication that Defendant has repeatedly pointed out satisfied the requirements of the notice of intent to levy statute, 26 U.S.C. § 6330.

**2.  The Only Remedy for a Defective Notice Is Return of Property Levied**

Citing nothing, Plaintiffs attack the idea that the only remedy for a defective notice of intent to levy is the return of levied property. (Opp. at 18:12-17). But that is precisely what Congress states in the governing statute regarding remedies where a levy was unlawful. *See* 26 U.S.C. 6343 (b) ("If the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return-- (1) the specific property levied upon, (2) an amount of money equal to the amount of money levied upon, or (3) an amount of money equal to the amount of money received by the United States from the sale of such property."). If Plaintiffs believe this remedy inadequate, their quarrel is with Congress, not the Government of Guam.

**3.  A Notice of Intent to Levy Is Only Required Prior to an Actual Levy**

Again citing nothing, Plaintiffs insist a proper notice of intent to levy was required even though their assets were never levied. (Opp. at 18:20-25). In relevant part, the notice of intent to levy statute states: (1) "No levy may be made on any property or right to property of any person unless the Secretary has notified such person in writing of their right to a hearing under this section before such levy is made"; and (2) that "[t]he notice required ... shall be ... sent ... not less than 30 days before the day of the first levy with respect to the amount of the unpaid tax for the

*CIVIL CASE NO. 05-00017*

9

{G0013794.DOC;2}
Case 1:05-cv-00017   Document 110   Filed 07/20/2006   Page 10 of 12

taxable period." 26 U.S.C. § 6330(a)(1), (2)(C). *I.e.*, a notice is only required (not surprisingly) to actually effectuate a levy. Thus, while notice here was adequate, it need not have been, because it is only required if a levy is later executed—which never occurred as to Plaintiffs.

### C. Plaintiffs Have No Claim Concerning the Notice of Lien

Plaintiffs claim they somehow paid taxes *pursuant to* the notice of lien sent to them because they informed DRT, following the notice, that their tax liability could be satisfied by offset. (Opp. at 19:3-10). And, separately, but redundantly, they argue that a notice of lien was required even if they satisfied their taxes by offset. (Opp. at 18:3-9; *see also id.* at 19:26-20:6).

First, the "offset" did not occur until December 2005. Plaintiffs purported to bring suit over their February 2003 payment. (Docket 24 at ¶ 60). But February 2003 was prior to the notice of lien being asserted in March 2003. (Pablo Dec. ISO Opp. to Class Cert. ¶¶ 35, 39-40, 42(c)-(f)). The notice of lien is a red herring.

Second, an offset can be made without notice of any kind. *Fulgoni*, 23 Cl. Ct. at 126 ("There is no express statutory requirement that the IRS make notice and demand for payment upon the taxpayer before collecting unpaid tax by administrative offset," nor does "fairness" require it). Thus, it is immaterial whether the offset occurred because the Dacanays pointed out that there was money to offset in response to the notice of lien or because DRT determined it independently. Like the IRS, DRT was fully within its rights to perform the offset once it realized the money was available, with or without any adequate notice regarding liens. *Id*.

Third, the purpose of a notice of lien is to inform taxpayers of their rights in a collections case. 26 U.S.C. § 6320. Plaintiffs received such notice with their intent to levy and accompanying publications. (Pablo Dec. ISO Opp. to Class Cert. at ¶¶ 25, 33 & Exs. K, L, O, V).

Fourth, while Plaintiffs state vehement disagreement without citation, the remedy for a defective notice of lien is lifting the notice. 26 U.S.C. § 6323(j)(1) ("The Secretary may withdraw a notice of a lien filed . . . , if the Secretary determines that ... the filing of such notice was premature or otherwise not in accordance with administrative procedures...."). Again, Plaintiffs' quarrel appears to be with Congress, not Guam. (Indeed, while the IRC creates no other remedy, Plaintiffs also failed to justify it. They have submitted nothing showing any injury

1 | "caused" by the notice of lien or showing how a collections hearing could have affected the
2 | statutory offset.) There is simply nothing to this claim, or any of Plaintiffs' other claims.
3 | Dated this 20th day of July, 2006.

OFFICE OF THE GOVERNOR OF GUAM
CALVO & CLARK, LLP
Attorneys at Law
Attorneys for *Government of Guam*

By: _____
JANALYNN C. DAMIAN

*CIVIL CASE NO. 05-00017*

11

{G0013794.DOC;2}