**FILED**
DISTRICT COURT OF GUAM
AUG -4 2006
MARY L.M. MORAN
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF GUAM

| | |
|---|---|
| Henry S. Dacanay and Laura Lynn Dacanay,<br><br>    Plaintiffs,<br>v.<br><br>Government of Guam,<br><br>    Defendant. | Civil Case No. 05-00017<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AS MOOT** |

## I. INTRODUCTION

Plaintiffs Henry and Laura Dacanay bring this class action against the Government of Guam. In their Amended Complaint, Plaintiffs allege that in the process of collecting income taxes from them for 1998 and 1999, the Government of Guam failed to issue a Notice of Deficiency, and a Notice of Lien, but did issue a Final Notice/Notice of Levy. Plaintiffs allege that they paid a portion of the 1998 and 1999 taxes under threat of these Notices. Plaintiffs seek a declaratory judgment that the Notices were defective and thus, void and that they are entitled to a refund of the taxes paid under threat of the Notices. In addition, Plaintiffs seek to maintain this action on behalf of all similarly situated taxpayers. On behalf of the proposed class, Plaintiffs request that the Court order the Government of Guam to notify affected taxpayers of the allegedly defective Notices and to refund any taxes paid by class members pursuant to those Notices.

Presently before the Court are Plaintiffs' Motion for Class Certification and Appointment of Class Counsel (Docket Item No. 54) filed on March 30, 2006, and the Government of Guam's

**ORIGINAL**

Motion for Judgment on the Pleadings, or in the alternative, Summary Judgment (Docket Item Nos. 97, 98.) filed on June 30, 2006. The Court conducted a hearing on August 2, 2006. Based upon the papers filed to date and the arguments of counsel, the Court GRANTS the Government of Guam's Motion for Summary Judgment, and DENIES Plaintiffs' Motion for Class Certification as moot.

## II. STANDARDS

The pending motions involve two conflicting considerations. On the one hand, the Federal Rules of Civil Procedure provide that a motion for class certification should be heard as soon as practicable. Fed. R. Civ. Pro. 23(c)(1). Plaintiffs filed their Motion for Class Certification on March 30, 2006. In a proper case, it is appropriate to postpone consideration of the merits of the action until after a class certification motion has been addressed. On the other hand, the Government of Guam seeks a ruling on its motion for summary judgment before the Court rules on the motion for class certification because if granted, summary judgment would render moot class certification and would avoid the attendant costs and litigation expenses associated with class notification. The Ninth Circuit has held that before ruling on class certification, it is "reasonable to consider a Rule 56 motion first when early resolution of a motion for summary judgment seems likely to protect both the parties and the court from needless and costly further litigation." Henry T. Wright, et al. v. Darrell Marlow Schock, et al., 742 F.2d 541, 544 (9th Cir. 1984). In this case, the ground for the motion for summary judgment, i.e., that the case is barred by the applicable statute of limitations, if sustained by the evidence, would result in termination of the case on the merits. Accordingly, the Court will proceed first to consider the motion for summary judgment.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." Celotex v. Catrett, 477 U.S. 317, 323-324 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes

2

demonstrate the absence of a genuine issue of material fact." Id. at 323. If this burden is met, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element with respect to which the non-moving party bears the burden of proof at trial. Id. at 322-23.

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties. To preclude the entry of summary judgment, the non-moving party must bring forth material facts, i.e., "facts that might affect the outcome of the suit under the governing law . . . Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).

The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1991) (citing Anderson, 477 U.S. at 255); Matsushita, 475 U.S. at 588; T.W. Elec. Serv. v. Pac. Elec. Contractors, 809 F.2d 626, 630 (9th Cir. 1987). It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." T.W. Elec. Serv., 809 F.2d at 631. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587.

### III. DISCUSSION

A. **Plaintiffs' Allegations**

The Dacanays filed their original complaint on June 8, 2005. On September 9, 2005, this Court dismissed the Complaint without prejudice. Specifically, this Court granted the Dacanays

3

leave to amend their Complaint to "allege sufficient facts showing that the action is not barred by the statutes of limitations." (Order Re Motion to Dismiss at 15, Docket Item No. 19.)

The Dacanays filed an Amended Complaint on October 7, 2005. (Amended Complaint for Individual and Class-Action Damages and Injunctive Relief, hereafter, "AC," Docket Item No. 24.) In their Amended Complaint, the Dacanays allege that they did not (1) receive a Notice of Deficiency complying with the requirements of 26 U.S.C. §§ 6212(a) and 6213(a), or (2) a Notice of Lien complying with the requirements of 26 U.S.C. § 6320. (AC ¶¶ 19, 38, 40, 41.) The Dacanays allege that they received a Final Notice/Notice of Intent to Levy, but that the notice failed to comply with the requirements of 26 U.S.C. § 6330. (AC ¶ 57.)

In their Amended Complaint, the Dacanays further allege that despite the fact that they did not receive the required proper Notices of Deficiency and Lien, the Government of Guam "assessed" taxes for 1998 on August 8, 2002, and "assessed" taxes for 1999, on June 28, 2000. (AC ¶¶ 27, 40.)

The Dacanays that on or about February 24, 2003, they paid taxes, including interest and penalties, in the amount of $1,719.09 for the 1998 tax year, and in the amount of $1,795 for the 1999 tax year. (AC ¶ 60.)

As a charging allegation, the Amended Complaint alleges that the taxes collected from the Dacanays pursuant to these Notices were improper. (AC ¶ 2.) The Dacanays seek a judgment refunding to them and members of the class all taxes paid under the defective Notices.

**B.     The Undisputed Facts**

The Court elects to consider this matter as a motion for summary judgment. Instead of limiting its consideration to the allegations of the Amended Complaint and the Answer, the Court considers the evidence presented by the Government of Guam. Principal reliance is placed on the undisputed documentary evidence attached to the Declarations of Paul J. Pablo. (Declaration of Paul J. Pablo in Support of the Government of Guam's Motion for Judgment on the Pleadings or, in the Alternative, Summary Judgment, hereafter, "Pablo SJ Decl., Docket Item No. 99; Declaration of Paul J. Pablo in Support of the Government of Guam's Opposition to Motion for Class Certification, hereafter, "Pablo CC Decl.," Docket Item No. 81.)

4

On April 15, 1999, the Dacanays filed their tax return for calendar year 1998. They claimed a refund due to them of $2,808.00. The Guam Department of Revenue & Taxation ("DRT") notified the Dacanays that their 1998 tax return had been selected for auditing. (Pablo CC Decl. ¶¶ 12, 13; Exs. B, F.)

While the audit of their 1998 income tax return was pending, on April 14, 2000, the Dacanays filed their tax return for calendar year 1999, in which they reported that they owed $1,795.00 in taxes. Instead of paying the $1,795.00, the Dacanays requested the DRT to offset the payment against a refund which was owed to them for their 1997 and 1998 income tax returns. The DRT declined this request on the ground that all refunds due to the Dacanays for 1997 had been paid and because any refund claimed due for 1998 was subject to the pending audit. (Pablo CC Decl. ¶ 19, 20; Exs. G, M.)

The Dacanays continued to fail to pay the $1,795.00, which they reported owing for 1999. Consequently, the matter was referred for collection. On October 2, 2000, the DRT Collections Department sent to the Dacanays a Notice of Intent to Levy. The Notice stated the relevant IRS Publications detailing the rights of a taxpayer being subjected to levy were included. (Pablo CC Decl. ¶¶ 23, 25; Exs. K, L, M, O, S.) The Dacanays would later come to cite this October 2, 2000 Notice as one of the defective notices upon which they base this action. They deny that the IRS Publications were included.

Meanwhile, on January 3, 2002, the DRT completed the audit of the Dacanays' 1998 return. Instead of a refund, the audit resulted in taxes owed for 1998 of $5,715.00 and penalty of $1,143.00. (Pablo CC Decl. ¶ 16; Ex. Q.) The Dacanays decided to stipulate to the correctness of the audit and to pay the taxes and penalty. They executed an Income Tax Examination Changes, "Form 4549," which provided:

> Consent to Assessment and Collection - I do not wish to exercise my appeal rights with the Department of Revenue and Taxation or to contest in the District Court of Guam the findings in this report. Therefore, I give my consent to the immediate assessment and collection of any increase in tax and penalties, and accept any decrease in tax and penalties shown above, plus any interest as provided by law. I understand that this report is subject to acceptance by Director.

5

(Pablo CC Decl. Ex. Q.) The Dacanays' 1998 GTIT taxes due were assessed on August 8, 2002. (Id. Ex. T.) As of February 6, 2003, the Dacanays had not paid the agreed 1998 taxes and penalty. The DRT referred the matter to its Collections Department. (Id. ¶ 28.)

On February 24, 2003, the Dacanays made a $10,238.15 payment toward their delinquent taxes. The exact allocation of the payment was:

a) $4,677.57 paid for Guam Gross Receipt Tax owed by the Dacanays for the periods from December 2001 to December 2002;

b) $5,560.58 paid to the Dacanays' 1998 GTIT tax year liability based upon the Form 4559 "agreed" examination result.

(Pablo CC Decl. ¶¶ 30-32; Ex. U.)

As a consequence of its allocation of the February 24, 2003 payment, the records of the DRT showed that the Dacanays still owed a balance of $1,297.42 for their 1998 taxes (in accordance with the Form 4549 agreed amount). Moreover, since the February 24 payment was insufficient to satisfy their outstanding 1998 income tax obligation, none of the February 24 payment was allocated to the $1,795.00 which the Dacanays had reported owing on their 1999 income tax return. That amount remained unpaid and was subject to the October 2, 2000, Notice of Intent to Levy discussed above. (Pablo CC Decl. see Exs. K, L, M, O, S.)

The Court notes that the Dacanays would later come to claim in this action a right to a refund of the February 24, 2003 payment on the ground that the underlying Notices were defective. Before proceeding to a consideration of the merits of the motion for summary judgment, the Court turns to a final undisputed facts with respect to the Dacanays' taxes.

Separate and apart from their income tax obligations, the Dacanays were subject to Gross Receipts Tax ("GRT") for earned rental income. While the proceedings with respect to their 1998 and 1999 income tax returns were taking place, the DRT was considering amendments being made by the Dacanays with respect to their GRT reports covering the same period of time. In addition, the Dacanays filed an application for amnesty. As consequence of being granted amnesty and being allowed to modify their GRT reports, the Dacanays became entitled to refunds. Eventually, the Dacanays requested the DRT to offset their 1998 and 1999 income tax obligations with the refunds due from the Government of Guam for the GRT modifications. (Pablo CC Decl. ¶¶ 35-39; Exs. O,

6

V, W, Y.) This request was granted and it resulted in full satisfaction of the Dacanays' 1998 and 1999 income tax liabilities. The lien which had been recorded for the Dacanays' failure to pay their 1998 taxes was released and no action was taken by the DRT to execute on the Notice of Intent to Levy with respect to the 1999 taxes. (Id. ¶ 40.)

It is the position of the Government of Guam that on the basis of these undisputed facts, the Government is entitled to judgment as a matter of law against the Dacanays. The Government of Guam contends that the Dacanays are not entitled to a refund because there was no defect in the Notices given to the Dacanays and that, in any event, the refund action is barred by the applicable statute of limitations. If the refund action is untimely, the Court would not need to consider the completeness of the various Notices themselves. Accordingly, the Court proceeds to address the statute of limitations issue.

C.  **The Applicable Statute of Limitations**

The Internal Revenue Code provides time limitations within which actions for refunds must be brought. Title 26 U.S.C. § 6511 provides that a "claim or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within *3 years from the time the return was filed* or *2 years from the time the tax was paid*, whichever of such periods expires later or if no return was filed by the taxpayer within 2 years from the time the tax was paid." (emphasis added.) "The limitations period is jurisdictional in nature and cannot be waived." Gabelman v. Commissioner, 86 F.3d 609, 611 (6th Cir. 1996.)

1.  **The Three-year Statute of Limitations -** *"from the time the return was filed"*

It is undisputed that the Dacanays filed their 1998 and 1999 returns on April 15, 1999 and April 14, 2000, respectively. (Pablo CC Decl. ¶¶ 12, 19; Exs. B & G.) It is also undisputed that the Dacanays never filed an administrative claim with the DRT for a refund of their 1998 or 1999 GTIT taxes. (Pablo SJ Decl. ¶ 4.) Finally, it is undisputed that to the extent this lawsuit is the "claim" upon which the Dacanays must rely to satisfy 26 U.S.C. § 6511, this lawsuit was not filed until *June 8, 2005.*

Pursuant to 26 U.S.C. § 6511, in order to make a timely claim, the Dacanays should have filed any claim or refund within three years of the filing or by *April 15, 2002 and April 14, 2003,*

7

respectively. Having failed to file a claim or refund before that date, the Dacanays' complaint is untimely when measured by the "3 years from the time of return" standard.

### 2. The Two-year Statute of Limitations - *"from the time the tax was paid"*

#### a. The 1998 Claim

It is undisputed that an actual payment for the 1998 taxes was made on February 24, 2003. Pursuant to 26 U.S.C. § 6511, the Dacanays should have brought their claim or refund within two years of that payment or by *February 24, 2005*. Again, the Dacanays did not make any claim for refund and did not file this suit until *June 8, 2005*, over three months after the running of the statute of limitations. Thus, the action for refund with respect to 1998 is untimely.

#### b. The 1999 Claim

In the Amended Complaint, the Dacanays claim that they also made actual payments of the taxes owed for 1999 year on February 24, 2003. If the Court adopts the Dacanays' position, this would mean that the February 24, 2003 payment, which the Court has ruled as making untimely the complaint for refund for 1998, would also make a refund action with respect to 1999 untimely. However, it is undisputed that the DRT did not apply the February 24, 2003 payment to 1999. Thus, the "from the time paid" standard for measuring the statute of limitations does not apply. Having previously ruled that the "from the time the return was filed" standard was not met, the Court is led to conclude that the action is untimely with respect to a claim for refund for 1999.

The allocation made by the DRT creates an anomaly which the Dacanays seek to use to excuse their failure to timely file the action for refund. For the first time, at the hearing on the motion, the Dacanays argued that when the DRT excused them from making a payment by offsetting a credit to their remaining tax debts on December 21, 2005, the offset constituted a "payment." The Dacanays contend this "payment" triggered the running of a new two-year statute of limitations under 26 U.S.C. § 6511. They moved the Court for leave to amend their complaint pursuant to Federal Rule of Civil Procedure 15, to add allegations about the December 2005 offset. The Government opposed the motion to amend.

The Court declines to allow the Dacanays to amend their complaint to add in events which took place after filing the complaint and which are not connected to the Notices which are the subject of the action.

Even if the Court finds that the Rule 15 motion is timely and appropriate, the Court concludes that such amendment would be futile. As the Dacanays have conceded, the December 21, 2005 payment is an offset. There is no dispute that the Internal Revenue Services (and by adoption the DRT) has express statutory authority to collect unpaid taxes by administrative offset. I.R.C. § 6402(a). Additionally, courts have recognized that there is no express statutory requirement that the IRS make notice and demand for payment upon taxpayer before collecting unpaid tax by administrative offset. In fact, an administrative offset is deemed a "simple bookkeeping operation" which applies a credit for one year against the debt of another year. Fulgoni v. United States, 23 Cl. Ct. 119, 126 (1991). Here, the Dacanays' December 21, 2005 adjustment was the result of the application of credits for the 1997 BRQ tax against the remaining taxes owed for the 1998 and 1999 years.

The Dacanays attempt to plead around the statute of limitations by contending that it is tolled and or that the Government of Guam is estopped from asserting the statute of limitations. However, these contentions are unavailing because tolling and or estoppel are not available as a matter of law. The United States Supreme Court has held that judicially created equitable exceptions to the statute of limitations that might apply in other types of cases do not apply in tax refund cases. United States v. Marian Brockamp, 519 U.S. 347 (1997).

## IV. CONCLUSION

The Court GRANTS the Government of Guam's Motion for Summary Judgment. The Court DENIES Plaintiffs' Motion for Class Certification as moot.

Dated: August 4, 2006

*[signature]*
JAMES WARE*
United States District Judge

*The Honorable James Ware, United States District Judge for Northern District of California, by designation.

9